63 N.J. Super. 117 (1960)
164 A.2d 69
GEORGE COZZI, PLAINTIFF,
v.
OWENS CORNING FIBER GLASS CORP., DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
PANGIA CONSTRUCTION COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1960.
Decided September 27, 1960.
*119 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Norman Heine argued the cause for appellant, Pangia Construction Company (Mr. Victor Taylor, on the brief).
Mr. Arthur Montano argued the cause for respondent, Owens Corning Fiber Glass Corp. (Messrs. Kisselman, Devine, Deighan & Montano, attorneys; Mr. Michael P. King, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Third-party defendant Pangia Construction Company (Pangia) appeals from judgment of $1,000 and costs rendered by the county district court in favor of third-party plaintiff Owens Corning Fiber Glass Corp. (Owens Corning) on its motion for summary judgment. The original suit, by plaintiff Cozzi against Owens Corning, was based on the latter's negligence and was uncontested. The third-party judgment was predicated on an indemnity clause whose construction forms the sole issue of this appeal. The summary judgment was based upon the following stipulation of facts between Owens Corning and Pangia:
On June 5, 1958 Pangia entered into a contract with Owens Corning to pave its yard and parking area. The terms of the contract appear on a form prepared by Owens Corning entitled "Purchase Order Services." On the reverse side of the form, entitled "Terms and Conditions for Purchase Order Services," appears the following indemnification clause:
"ARTICLE 20. Indemnification of Owner: The Contractor hereby agrees to save and indemnify and keep harmless the Owner against all liability claims and judgments or demands for damages arising from accidents to persons or property occasioned by the Contractor, his agents or employees, and against all claims or demands for damages arising from accidents to the Contractor, his agents or employees, whether occasioned by said Contractor or his employees or by Owner or his employees or any other person or persons and the said Contractor will defend any and all suits that may be brought *120 against the Owner on account of any such accidents and will make good to, and reimburse, the Owner for any expenditures that said Owner may make by reason of such accidents."
Cozzi, a tractor operator employed by Pangia, was injured while working in the area alongside the building occupied by Owens Corning. His injury was caused when hot waste kaylo, commonly called "sury," came through a window of the second floor of the building and spilled on him. The sury was caused to splash out of the window when the holes in the lid of the pre-heater, the machine in which it was contained, became clogged. Because the holes were clogged, the steam pressure which usually escapes from them was trapped. The additional pressure thus built up forced the sury out the window and onto Cozzi.
The premises in which the machine was used, and the machine itself, were at all times in the exclusive control and possession of Owens Corning and its employees. The work performed there by Owens Corning was independent of and totally unrelated to the work to be performed by Pangia. Cozzi, the injured employee, had a right to be in the area alongside the building at the time of his injury, and his work, like that of Pangia's other employees, was independent of and totally unrelated to the work performed by Owens Corning or its employees.
Cozzi instituted suit in the county district court against Owens Corning, alleging that it negligently caused his injury. Owens Corning then filed a third-party complaint demanding judgment against Pangia for reimbursement of all or any part of such sum as might be found in favor of Cozzi against Owens Corning. Cozzi recovered $1,000 and costs against the latter.
The trial court concluded that the indemnification clause quoted above should be construed as extending to accidents like the one which resulted in injury to Cozzi  an accident occasioned by the sole negligence of the indemnitee Owens Corning, owner of the premises, and resulting from an activity entirely under the control of Owens Corning and *121 unrelated to the work being performed by Pangia, the indemnitor. Pangia contends that such a construction was error and the motion for summary judgment should have been denied because the indemnification clause does not evidence an intention on the part of the contracting parties to cover an accident such as occurred here. The position of Owens Corning is that the clause is entirely clear and unambiguous, was purposely written broadly, and should be construed accordingly.
A contract of indemnity is to be interpreted in accordance with the rules governing the construction of contracts generally. The fundamental rule in construing contracts calls for the ascertainment of the intention of the parties in the light not only of the language used but also of the surrounding circumstances and the objects sought to be attained by them under their agreement. Stern v. Larocca, 49 N.J. Super. 496, 501 (App. Div. 1958). As stated in George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20, 32 (1954), in the case of an integrated contract the judicial quest "is for the reasonably certain meaning of the language used, taken as an entirety, considering the situation of the parties, the attendant circumstances, the operative usages and practices, and the objects the parties were striving to achieve. * * * [T]he chosen words and phrases are to be realistically assessed, in relation to the context and the obvious general purpose of the compact, for the meaning that is reasonably clear, such as is within the reasonable understanding of the symbols of expression."
The general rule appears to be that where the act of negligence of the indemnitee is the sole cause of the accident, he is not entitled to recover against the indemnitor unless an intent to indemnify is unequivocably spelled out in the contract, the surrounding circumstances, and the objects to be attained by the parties. See Annotation, 175 A.L.R. 8, §§ 18 and 19, pp. 29-34 (1948); George M. Brewster & Son v. Catalytic Const. Co., above; Cross v. Robert E. Lamb, Inc., 60 N.J. Super. 53 (App. Div. 1960, *122 decided under Pennsylvania law); Stern v. Larocca, above, which reviewed the cases; Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593 (App. Div. 1955). An examination of the cases denying indemnification reveals that the clauses there involved were more restrictive in expression than the one here under consideration. For example, in Brewster the clause read:
"It is understood and agreed that you indemnify us against all loss, damage, expense and penalty arising from any action on account of personal injury or damage to property occasioned by the operation and handling of this equipment during the rental period, or any extension thereof."
The clause in Stern was:
"* * * The Contractor shall bear all loss or damage from accidents which may occur to any person or persons, by or on account of the prosecution of the work, until possession is taken by the owner. * * *"
And in Longi the indemnity provision of the lease obligated the tenant to make all repairs to the sidewalks adjacent to the premises, and to indemnify and hold harmless the municipality from any and all claims arising out of the lessee's conduct and management of the premises and adjacent sidewalks.
Under the indemnification clause in this case Pangia specifically agreed to indemnify and save Owens Corning harmless against all claims or demands for damages "arising from accidents to the Contractor [Pangia], his agents or employees, whether occasioned by said Contractor or his employees or by Owner or his employees or any other person or persons * * *." The clause is clear enough and broad enough to leave little doubt that it covers the accident suffered by Cozzi. The parties' expression of their intention is unambiguous.
True, a clause like "on account of any claim, demand or suit brought against the Contractor" has generally been interpreted strictly so as not to include damages resulting *123 from the indemnitee's negligence. Annotation, 175 A.L.R. 8, § 68, p. 144 et seq. But the broad language of the cases so holding does not include reference to accidents caused or occasioned by the owner. That an indemnification clause fails to refer to the negligence of the indemnitee should not be controlling. This is merely evidence of the fact that the parties contract without regard to fault, but only with regard to liability. Had the parties added the word "negligence" in the clause, dispute might then arise as to whether liability could be imposed without fault, or even as to whether there was an intention to include injuries occasioned by the indemnitee's sole active negligence. Surely it is not necessary that parties incorporate into the language of their agreement all the specific possibilities through which the indemnitee-owner might cause an accident  by sole negligence, concurrent negligence, active sole negligence, passive concurrent negligence, etc.
Although the clause in question does not specifically refer to the sole active negligence of Owens Corning, it is manifestly broader than that and does show an express intention to encompass the sole active negligence of the owner as well. Reading the clear and express language of the present clause realistically and logically, we find that Owens Corning sought and obtained in Article 20 indemnification under two broad contingencies: (1) accidents occasioned by Pangia, its agents or employees, to any person or property; and (2) accidents resulting in damage to Pangia, its agents or employees, no matter by whom occasioned.
At oral argument appellant posed the question of whether Owens Corning could seek indemnification had Cozzi been injured at some distance from the Owens Corning plant while returning home from work, when struck by a truck owned by Owens Corning and driven by one of its employees. We need not consider that or any similar situation: what we have said must be considered in the context of the circumstances here present. When, as in the present case, the language used is broad enough to manifest an intention to *124 indemnify against an accident such as happened, irrespective of fault, the court should give it effect according to its plain and clear meaning. This was the business arrangement sensibly entered into and bargained for by the parties. There is no reason why we should not give it the sanction we would accord any other business contract equally clearly expressed.
An indemnity clause identical to the present one was construed by the court in Dayton Fabricated Steel Co. v. Dayton Town & Country, Inc., 99 Ohio App. 309, 133 N.E.2d 423 (Ct. App. 1954). An employee of the contractor was injured on the job when the owner negligently prepared a foundation for the structural steel erection which the employer had contracted to perform. The court assumed that the injury was due to the sole negligence of the owner-indemnitee, and that the contractor-indemnitor had no control of the premises. Admittedly the connection between the work and the injury which existed in Dayton is not present in our case, but it is doubtful if the absence of this element would have made any difference in the Ohio court's determination in the face of its characterization of the indemnification clause as one of "unqualified indemnity." The court said:
"* * * The defendant claims that the contract is clear and concise and permits of no construction other than the obligation for which it contends. We are in agreement with the claims of the defendant. The contract clearly covers the work which the plaintiff was to perform for the owner, the defendant. The place where the work was to be performed was definitely fixed. Cranford, an employee of the plaintiff, was injured while at work on the project covered by the contract. Whether his injuries were caused by the negligence of plaintiff's employees or defendant's employees is in controversy.
It would be difficult to frame language more inclusive than found in article 8 of the contract fixing the obligation of plaintiff respecting the subject matter of Cranford's action in Franklin County. It is charged, and it may eventuate, that Cranford's injuries were caused by the negligence of defendant's employees, but the contract made no such requirement as a prerequisite to plaintiff's liability. It provides that the contractor shall indemnify the owner against all liability, claims, or judgments for damages arising from accidents to the contractor or his employees, whether occasioned (caused) by *125 said contractor or his employees or by the owner or his employees; * * *
The cases cited by defendant hold that contracts indemnifying the indemnitee against claims or damages arising out of the negligence of his own employees are enforceable and not against public policy, although to be strictly construed. [citing cases]
It is desirable when an owner contracts with one who is to perform services and furnish labor for him, that such contractor shall indemnify the owner without qualification against damages and resultant expenses for injuries suffered by workmen by reason of accidents occurring on the job. Such unqualified indemnification precludes all questions such as have arisen here; namely, the cause of the injuries, whether by reason of the negligence of the owner, his employees, the contractor or his employees, or without the fault of either. * * *" 99 Ohio App., at pages 312-313, 133 N.E.2d, at page 425.
The broad scope legitimately effected in the indemnity agreement in the Dayton case is made clear by the procedural context. The indemnitor brought a declaratory judgment action against the indemnitee to determine whether there was an obligation to assume the defense of the suit started by the indemnitor's employee against the indemnitee. The issues of responsibility for the injuries and the precise facts surrounding the accident had not as yet been determined, since the principal suit was held in abeyance until the scope of the indemnity clause was determined. But faced with such an inclusive agreement, the Ohio court did not feel it necessary to have a precise determination of the facts surrounding the accident. It was enough that the allegations of negligence were against the indemnitee, and that the claimant was one of the class of persons against whom the indemnitor had agreed to hold the indemnitee harmless. The Ohio court thus found the clause, similar to that in our case, to be one of unqualified indemnity, as clear, explicit and unequivocal an expression of the legal effect of an indemnity clause as could be made.
The so-called rule of "strict construction" of indemnification clauses has been justified because of the fear entertained that to include the indemnitee's sole negligence within the indemnification coverage would impose upon the indemnitor *126 a liability the extent of which would be uncertain and indefinite and entirely in the hands of the indemnitee  a liability which could not only wipe out all profit but might exceed the total consideration for the job or even the indemnitor's entire fortune. See Annotation, 175 A.L.R., above, at pages 147-148. We may take judicial notice of modern business conditions which make this rationale no longer pertinent. Today the risk of injury may be shifted to an insurance company, and commonly is. The question involved is: Who should pay the additional insurance premium  contractor or owner? It would seem that the parties should be free to distribute this burden as they desire, and that the court should therefore approach a contract of indemnity in the same manner as any other contract which distributes various insurance burdens between and among the parties.
Having construed the contract as calling for indemnity despite the fact that the accident was due to the sole active negligence of the owner, the next question is whether the indemnity clause applies in the case of an accident unrelated to the work undertaken by the contractor. Pangia contends that we should interpret the agreement to contain the implied limitation that indemnity exists only for accidents occurring as a result of the prosecution of the work contracted for. What has been said before in regard to the interpretation of indemnity agreements, insurance and the rule of "strict construction," applies with equal force to this point. The clause is broad enough to encompass such an accident as occurred here, and therefore differs from the clauses considered in Brewster, Stern and Longi. We repeat what has been said before: that we need not decide what effect the language of the clause in question would have if the accident had occurred within the scope of employment but not on the location of the job. The fact is that Cozzi was injured while in Pangia's employ and while working on the very paving job specifically covered by the contract with Owens Corning. To limit the indemnification clause to *127 work-connected accidents would not only be to ignore the language of the clause but would be entirely unrealistic. Owens Corning simply did not want to be responsible for the safety of Pangia's employees while working on its premises.
Two recent New York cases interpret a clause calling for indemnity for all injuries "arising out of or in consequence of the performance of this contract * * * due to any negligence of the owner, sub-contractor or general contractor * * *." Stellato v. Flagler Park Estates, 11 Misc.2d 413, 172 N.Y.S.2d 90 (Sup. Ct. 1958), affirmed 6 A.D.2d 843, 178 N.Y.S.2d 242 (App. Div. 1958); George A. Fuller Co. v. Fischbach & Moore, Inc., 7 A.D.2d 33, 180 N.Y.S.2d 589 (App. Div. 1958). In each case the indemnitor contended that the doing of the work must be the proximate cause of the injury. In each the injury was caused by the sole negligence of the indemnitee. The New York courts characterized the clause as one of "absolute indemnity," rejecting the requirement of causal relation, and held that the injured person need only be in the scope of his employment.
In Fuller an electrical subcontractor's employee was injured through the exclusive active negligence of plaintiff contractor's employees while he was within the scope of his employment and actively engaged in the work contracted for. The court held the language used unequivocally had as its purpose the indemnification of the general contractor for his own negligence, and that the language "arising out of," etc., when read in context, referred only to the scope of employment and did not require that the injury be caused by work the subcontractor was doing. The court distinguished Thompson-Starret v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35 (Ct. App. 1936), upon which appellant here relies. The clause in Thompson-Starret indemnified "against all claims for damages to persons growing out of the execution of the work." "Work" had been defined in the contract, and the court there held that the injury sustained *128 could not be said to grow out of the work within the meaning and intent of the agreement. On the other hand, the court in the Fuller case concluded that the indemnity provision there under consideration could not, because of the breadth of its language, be termed a mere incident of the contract, intended to apply only to the work undertaken by the subcontractor.
In Stellato an employee of the contractor-indemnitor was injured when, in the scope of his employment, he fell through an opening in a bridge left unguarded by the owner-indemnitee. The opening of the bridge was totally unrelated to the particular work which was the subject matter of the contract. The New York court noted that the owner's risks were increased as the contractor's employees were brought within the scope of the owner's duty, and that the owner had sought by contract to escape the added risk and liability.
Holding the indemnitor liable on its contract here is entirely consistent with prior holdings by our courts. The difference in result is due to the difference in the indemnification clauses involved. Nor is it offensive to notions of public policy to allow Owens Corning, the owner-indemnitee, to contract itself out of liability for negligence. Cf. 2 Restatement, Contracts, § 572, p. 1077 (1932); Trenton Passenger Ry. Co. v. Guarantors Liability Co., 60 N.J.L. 246 (Sup. Ct. 1897).
The modern trend in judicial decision appears to recognize that an owner may seek to contract out of the increased risks and hazards created when a contractor's employee is brought within the scope of his duties. Realistically viewed, the shift of liability is a shift in the burden of providing adequate insurance coverage. Broad and unqualified indemnity agreements may be used to effectuate this intent. If the parties, as here, choose language broad enough to attain this goal, the court should not frustrate their intention unless the surrounding circumstances are such as clearly and completely negate the meaning of the language used.
Judgment is affirmed.