201 N.J. Super. 142 (1985)
492 A.2d 1055
HENIA STIER AND LEONARD STIER, PLAINTIFFS,
v.
SHOP RITE OF MANALAPAN, DEFENDANT-APPELLANT, AND VORNADO, INC., DEFENDANT-RESPONDENT, AND MARK SMOLIN, KENNETH M. PHILPOT, WAYNE CRAVEN AND JOHN LESTER CLARK, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1985.
Decided May 10, 1985.
*145 Before Judges KING, DEIGHAN and BILDER.
Wolff, Helies & Duggan, for appellant (Maureen G. Bauman, on the brief).
Friedman, Carney & Wilson, for respondent (James F. Carney, of counsel and Thomas A. Harley, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
*146 Defendant Shop Rite of Manalapan (Shop Rite) appeals from a $25,000 judgment against it in favor of defendant Vornado, Inc. (Vornado) pursuant to an indemnification clause in a lease. Vornado and Shop Rite were sued, along with other individual defendants not parties to this appeal, in a personal injury action by plaintiff and her husband per quod for damages arising out of a mugging which occurred in the parking lot of a shopping center owned by Vornado, a part of which was leased to Shop Rite.
On May 6, 1981 plaintiff Henia Stier was a patron of Shop Rite in Manalapan. She left the store at about 9:40 p.m. and was mugged in the parking lot by the four individual defendants who were later apprehended. She claimed that most of the lights in the parking lot were off but employees of Shop Rite, as well as two of the muggers-defendants, claimed that the lights were lit at the time. Plaintiffs allege that defendants negligently operated, maintained, and supervised the premises, and as a result Henia was assaulted and robbed by the four individual defendants whereby she sustained serious personal injuries.
Shop Rite maintained its own shoplifting patrol within the store area consisting of a team of two individuals to cover four or five of its stores in the area. Vornado, who also operated a Two Guys discount store in the shopping center, maintained uniformed security guards at the door of its store and nonuniformed guards for internal patrol. None of the Vornado guards remained after 9 p.m. when Vornado closed. Shop Rite remained open until 10 p.m. The lights in the parking area were turned on automatically and remained lit until 10:30 p.m. when they turned off automatically.
Shop Rite as a tenant leased space in the shopping center in Manalapan from Vornado as landlord. Under Section 11.01, the "demised premises" was defined in the lease as that portion of a certain building shown as an exhibit attached to the lease. *147 Shop Rite was granted a nonexclusive license to permit its customers and employees to use the entrance and exits designated by Vornado for access to the demised premises.
Section 11.04 of the lease required Shop Rite to contribute to the cost of maintenance and operation of the parking area as well as the cost of Vornado's obligations concerning the common area including the cost of insurance. Under Section 2.01 the "common area" is defined as the entire shopping center other than those portions upon which buildings, structures or other improvements have been erected except for designated special use areas. Under Section 11.05 Vornado assumed the obligation to keep the parking area properly paved in good order and repair; to keep the lights on at certain designated hours; to keep the area drained; to provide painted parking spaces, and to keep the area free of snow and ice.
Section 14.01 of the lease contained reciprocal indemnification clauses. Under Subsection (b), Shop Rite, as tenant, agreed to indemnify Vornado as follows:
(b) Tenant hereby indemnifies and agrees to save harmless Landlord, any Master Lessor and Mortgagee from and against any and all claims, which either
(i) arise from or are in connection with the possession, use, occupation, management, repair, maintenance or control of the Demised Premises, or any portion thereof;
(ii) arise from or are in connection with any act or omission of Tenant, or Tenant's agents;
(iii) result from any Default, breach, violation or non-performance of this Lease or any provision therein by Tenant; or
(iv) result in injury to person or property or loss of life sustained in or about the Demised Premises.
Vornado under Subsection (c) agreed to indemnify Shop Rite as follows:
(c) Landlord hereby indemnifies and agrees to save harmless Tenant from and against any and all claims which either
(i) arise from or are in connection with the possession, use, occupation, management, repair, maintenance or control of the Common Area or any portion thereof;
(ii) arise from, or are in connection with any act or omission of Landlord in connection with the Common Area;

*148 (iii) result from any Default, breach, violation or non-performance of this lease or any provisions therein by Landlord with respect to the Common Area; or
(iv) result in injury to person or property or loss of life sustained in or about the Common Area.
When Vornado and Shop Rite filed their answers to the complaint denying liability, they crossclaimed against all co-defendants and against each other for contribution and common law indemnification. Subsequently, on November 1, 1983, after settlement negotiations, an order for judgment, to which all parties except Shop Rite consented, was entered in favor of plaintiffs and against Vornado in the amount of $25,000 and against three of the individual defendants in the amounts of $3,000 each. The judgment recited that the $25,000 was in compensation for both Vornado and Shop Rite's joint liability and Vornado "preserved" its rights to proceed against Shop Rite on its claim for indemnification in the same proceedings.
Vornado then moved for judgment for complete indemnification against Shop Rite. Both defendants filed briefs in support of their respective positions and submitted the matter without further proofs or oral argument. Judgment was entered on April 16, 1984 in favor of Vornado and against Shop Rite for $25,000.
On appeal Shop Rite contends that under the lease Vornado is not entitled to indemnification for the judgment paid by it to plaintiffs for the personal injuries sustained as a result of the incident which occurred in the parking lot of the shopping center. It also argues that the indemnification is ambiguous and that any ambiguity should be construed against Vornado as the draftsman of the lease. It further maintains that since there is a factual issue as to the lighting in the parking lot, the matter must be remanded for findings of fact.
Vornado disagrees and argues that the lease was properly interpreted by the trial judge; that there is no ambiguity in the lease which requires a strict construction against it as the *149 draftsman, and that the case was "right for determination" since there is no disputed issue as to the lighting.
In support of its position that there is no disputed issue as to lighting, Vornado refers to excerpts of depositions of Shop Rite's employees that the lights in the parking lot were lit. Plaintiff Henia Stier contended otherwise, thereby positing a factual issue. However, from our review of the record the factual issue was not directed to the trial court and an appellate court will not consider issues presented to it when not properly presented to the trial court in the first instance. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). Moreover, we do not consider any factual question relevant to our disposition in this matter.
Shop Rite also complains because the trial court failed to make findings of fact. It appears that the motions by both Vornado and Shop Rite were in effect motions for summary judgment on their crossclaim against each other for indemnification although they were not denominated as such. The matter was submitted on briefs, without argument or further proofs. The trial judge obviously did not consider the matter as a motion for summary judgment requiring findings of fact pursuant to R. 4:46-2. He apparently considered the indemnification provisions clear and unambiguous and found no factual issue involved in the motion. He therefore construed the lease as a matter of law. Trucking Emp. of North Jersey, etc. v. Vrablick, 177 N.J. Super. 142, 148 (App.Div. 1980).
Initially, since Vornado relies upon the judgment against it in the direct action by the plaintiffs as a basis for indemnification against Shop Rite, Vornado is bound by that judgment which adjudicates Vornado's liability to plaintiffs. Where the indemnitee relies on the judgment against it as the basis of recovery over, it must take for better or for worse the adjudicated facts on which the judgment rests. The indemnitee cannot both approbate and reprobate. George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20, 34-35 (1954).
*150 Moreover, at this point, Shop Rite has not been found guilty of any negligence. See Sattelberger v. Telep, 14 N.J. 353, 367 (1954), holding that in contribution proceeding it is fundamental that an alleged joint tortfeasor must have his day in court as to both liability and damages. Vornado did not, and of course could not, consent to judgment on behalf of Shop Rite. Therefore, Vornado, since it has been adjudicated negligent, may not automatically recover for indemnification; the nature of the indemnification clause must be determined and, in relation to that determination, the extent and degree of negligence of Shop Rite may then become an issue.
There is no question but that in a commercial setting parties are free to negotiate the allocation of tort liability regardless of fault. Berry v. V. Ponte & Sons, 166 N.J. Super. 513, 517-18 (App.Div. 1979), certif. den. 81 N.J. 271 (1979); accord Ramos v. Browning Ferris Ind. of So. Jersey, Inc., 194 N.J. Super. 96, 101 (App.Div. 1984). Where the agreement purports to indemnify the indemnitee for its own negligence, courts closely scrutinize the agreement to ascertain whether the parties intended to shift liability. Ibid.; Rommell v. U.S. Steel Corp., 66 N.J. Super. 30, 43 (App.Div. 1961), certif. den. 34 N.J. 580 (1961); Ruvolo v. U.S. Steel Corp., 139 N.J. Super. 578, 584 (Law Div. 1976). Thus, an indemnification agreement may be worded so broadly and clearly as to provide for absolute indemnification of one party, even though that party's negligence  whether it be sole or concurrent, active or passive  caused the injury. Rommell v. U.S. Steel Corp., supra, 66 N.J. Super. at 42.
Where the negligence of the indemnitee is the sole cause of the accident, recovery is denied against the indemnitor unless an intent to indemnify is unequivocally spelled out in a contract, surrounding circumstances, and the objects to be attained by the parties. George M. Brewster & Son v. Catalytic Const. Co., supra, 17 N.J. at 32; Cozzi v. Owens-Corning Fiber Glass Corp., 63 N.J. Super. 117, 121 (App.Div. 1960). *151 However, it is recognized that something less than an express reference in the contract will suffice to indemnify against losses from the indemnitee's negligence if the intent otherwise sufficiently appears from the language and circumstances. Stern v. Larocca, 49 N.J. Super. 496, 503-504 (App.Div. 1958). The judicial quest is for the reasonably certain meaning of the language used, taken as an entirety, considering the situation of the parties and the operative usages and practices coupled with the objects the parties were striving to achieve. George M. Brewster & Son, supra and Cozzi, supra. Doubt is required to be resolved in favor of the indemnitee. Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 603 (App.Div. 1955).
In Doloughty v. Blanchard Const. Co., 139 N.J. Super. 110 (Law Div. 1976), Judge Pressler, in an in-depth analysis of indemnity agreements in construction contracts, observed that there are two types of indemnity provisions in construction contracts  one the broad type and the other the restrictive type. The broad type of agreement requires the indemnitor to indemnify the indemnitee for any damage or injury that occurs during or in connection with the indemnitor's performance of the contract work. The broad type further requires indemnification regardless of fault and "[i]rrespective of the absence of an express undertaking to indemnify the indemnitee for his own negligence." Id. at 117. As examples of the broad-type indemnity clause the court cited Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508 (App.Div. 1961), aff'd 36 N.J. 532 (1962), Polit v. Curtiss Wright Corp., 64 N.J. Super. 437 (App.Div. 1960), and Cozzi v. Owens-Corning Fiber Glass Corp., supra.
Conversely, the restrictive type of indemnity agreement is limited to a risk of loss or damage resulting from the indemnitor's fault or negligence. In this type of indemnification, not only is there a specific reference to the indemnitor's fault or negligence, but there is also reference to loss or damage resulting from the indemnitor's "acts or omissions." *152 139 N.J. Super. at 118. One indemnification clause applicable to the present factual situation is § 14.01(b)(ii) whereby Shop Rite agrees to indemnify Vornado for all claims which arise from any "act or omission of [Shop Rite]." Since indemnification is limited to Shop Rite's own "acts or omissions" the indemnification is the restrictive type, i.e., limiting Shop Rite's obligation to indemnify only for its own negligence.
Judge Pressler then discussed situations where both the indemnitor and indemnitee have been named as negligent parties. She noted that where the subject of the indemnity is the restrictive type, i.e., arising from the act or omission of the indemnitor (Shop Rite), then the indemnification agreement should protect a concurrently negligence indemnitee (Vornado) only if its negligence is passive or secondary vis-a-vis the indemnitor whose negligence is active or primary. Without indemnification, the negligent indemnitee would be left only with its statutory right of contribution from a joint tortfeasor. Id. at 121.
Judge Pressler also noted that the terms "active" or "passive" and "primary" or "secondary" are "more formally categorical than substantively meaningful." In determining the respective obligations of contracting parties inter se, other circumstances must be examined. Id. at 121-122. Thus, where a plaintiff claims that each of the defendants failed in an independent duty which each owed to plaintiff as a matter of common law negligence, then if plaintiff is correct, a theory against each may be maintained.
But inter se, their status is quite different and their relationship to each other expressed in their contractual undertaking, trade custom and usage, and in their course of conduct in respect of the job and each other may well bespeak an intention that one of them be charged with the full and entire obligation. The test need not be based on how, definitionally, the failure of duty of each is categorized, whether active or passive or primary or secondary. What that categorization seeks to achieve is simply a determination of whether or not, considering all of the relational circumstances, the indemnitee reasonably expected as part of his bargain with the indemnitor that the duty he failed to perform and on which his liability to plaintiff is predicated would be performed by the indemnitor. [Id. at 122].
*153 Vornado apparently concedes that section 14.01(c)(iv) of its indemnification clause applies. This section provides that Vornado will indemnify Shop Rite against any claim resulting in "injury to person or property or loss of life sustained in or about the Common Area." It also concedes that the incident occurred in a Common Area. However, since case law imposes a duty on a shopkeeper to provide adequate security for its patrons, Vornado reasons that plaintiffs' claim must have arisen from Shop Rite's primary negligence in failing to provide adequate security. Therefore, it contends, section 14.01(b)(ii) controls. As noted above, this section obligates Shop Rite to indemnify Vornado against any claim arising from Shop Rite's "own act or omission."
However, the cases relied upon by Vornado to support its view that Shop Rite had a duty to provide adequate security for its patrons, see, e.g., Butler v. Acme Markets, Inc., 89 N.J. 270 (1982); Atamian v. Supermarkets General Corp., 146 N.J. Super. 149 (Law Div. 1976), do not necessarily relieve a landlord-owner from its concurrent liability to the harmed patron.
The parking lot is a part of the common area which is controlled by Vornado. Under § 14.01(c)(iv) Vornado primarily assumes responsibility for injuries to persons "in or about the Common Area." The holding of Butler is applicable, not only to shopkeepers, but also to the proprietor of premises to which the public is invited for business purposes of the proprietor. Butler, supra, 89 N.J. at 275. It has been suggested that the duty should extend to commercial lessors. Id. at 282. This would be a most logical imposition of responsibility particularly in a shopping center where the tenants may have an obligation separately yet in common but the landlord has the overall obligation and control of the parking lot.
A shopping center is different in substantial respects from other kinds of retail establishments. Its existence has been created by a change in the shopping habits of a great number of the public, the greater use of the automobile and the consequent *154 need for more parking facilities. Current commercial development is tending to cluster in compact areas, and a newly developed shopping center, planned and developed as a unit, may embrace a diversity of stores to enable a shopper to fulfill his needs at one stop, thereby alleviating problems of parking and traffic. Local shopping districts or centers are of various types and may vary widely. DuPont v. Planning & Zon. Com'n of Town of Stratford, 150 Conn. 213, 240 A.2d 899 (Sup.Ct. 1968); see 82 Am.Jur.2d Zoning and Planning, § 143 (1976). The primary characteristics of a shopping center are off-street parking facilities, a group of retail stores and a planned development. 82 Am.Jur.2d, supra at 622.
Normally, commercial leases in a shopping center require the tenants to pay as additional rent a percentage of the net or gross profit, or, as in the present case, a percentage of gross sales. The owners and operators of a shopping center are therefore as interested in attracting as many customers to its tenants as are the tenants. The customers may patronize more than one of the tenants on each shopping trip. That is a prime purpose of a shopping center. Moreover, customers of a particular tenant do not always park in the designated area for that particular tenant.
The landlord is in a better position to provide security for the entire parking area for all its tenants rather than endeavoring to require a tenant to provide security for its designated area. The tenants are presently required to pay for the cost of maintenance, including insurance, in the parking area. Any additional cost for security, if required, could be readily prorated by Vornado among its tenants.
Additionally, merely because a store operator has the duty to provide adequate security for its patrons in a parking lot does not mean that every mugging incident which occurs in a parking lot will result in a finding of negligence on the part of the shopkeeper. Thus Vornado cannot assume that Shop Rite was in fact negligent merely because a patron was assaulted in the *155 parking lot near the Shop Rite store. Nor can Vornado assume that Shop Rite was solely negligent. Plaintiffs charged both Vornado and Shop Rite with negligence. We previously noted that Vornado has been adjudicated negligent by its consent judgment and that there has been no determination of negligence on the part of Shop Rite.
Despite the broad language of section 14.01(c)(iv), Vornado concludes that the only liability it undertook with respect to the common areas was liability arising from the "physical integrity" of such areas. We disagree.
First, the language of the agreement itself indicates no such restricted interpretation. Second, one of the main purposes of the indemnification provisions is to distribute the insurance cost for the parking area. Because parties now commonly shift their contractual risk of loss to insurance companies, strict construction of indemnity provisions is anachronistic. First Jersey National Bank v. Dome Petroleum Ltd., 723 F.2d 335, 340 (3 Cir.1983); Cozzi v. Owens Corning Fiber Glass Corp., supra, 63 N.J. Super. at 126-128. Here, the parties clearly imposed insurance costs upon the tenant for liability within its own demised premises, and upon Vornado in the common areas. The tenants make a pro rata contribution to the upkeep of the common areas, part of which includes the parking areas, which contribution goes toward the purchase of insurance for the common areas. The lease recognizes that the burden is upon Vornado to purchase insurance in the common areas not only for itself, but also for the tenants who pay for a portion of the insurance.[1]
Under the principles of indemnification previously discussed, we hold that the indemnification by Shop Rite in *156 section 14.01(b)(ii) is the restrictive type which does not indemnify Vornado against its own negligence. In order for Vornado to recover on its indemnity, the negligence of Shop Rite must be primary or active as compared to secondary or passive negligence of Vornado. Assuming that both parties are concurrently liable with no distinction in the degree of negligence, we hold that there is no factual or legal basis upon which to grant indemnification in favor of Vornado. Moreover, it appears that Vornado is liable for damages under the language of the lease which shifts the risk to Vornado for injuries arising in the common areas, insurance for which Shop Rite contributes.
Reversed.
NOTES
[1] Section 14.02(a) requires Shop Rite to provide a comprehensive policy of liability insurance naming Vornado as an additional insured protecting against liability occasioned by not only an occurrence about the demised premises but from any of the indemnity provision in 14.01. No issue has been framed concerning this provision.