**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5204-18T2

TOWNE REALTY GROUP,
LLC, MARK BIGOS, KAREN
EASTMAN BIGOS, and
DANIEL CANNIZZO,

     Plaintiffs-Appellants,

v.

NRK OF NEW JERSEY, INC.,
CHARLES OPPLER, RANDY
LYN KETIVE, and SOTHEBY'S
INTERNATIONAL REALTY,

     Defendants-Respondents.

_____

        Argued November 17, 2020 – Decided January 5, 2021

        Before Judges Yannotti, Haas and Mawla.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2529-16.

        Mark A. Berman argued the cause for appellants (Hartmann, Doherty, Rosa, Berman & Bulbulia, LLC, attorneys; Mark A. Berman and Kelly A. Zampino, on the briefs).

Michael R. Scully argued the cause for respondents (Michael R. Scully, LLC, attorneys; Michael R. Scully and Maurice Napolitano, on the brief).

PER CURIAM

Plaintiffs appeal from the order of judgment dated June 17, 2019, and certain orders previously entered in this case. Plaintiffs contend the trial judge erred by dismissing their claims at trial pursuant to Rule 4:37-2(d). They also contend the trial court erred by limiting the scope of discovery. We affirm.

I.

This appeal arises from the following facts. In 2016, Towne Realty Group, LLC (TRG) was a real estate brokerage business with an office in Short Hills. Mark and Karen Bigos (the Bigoses) and Daniel Cannizzo (Cannizzo) were members of TRG (collectively, the TRG Members). The Bigoses were licensed real estate brokers, and Cannizzo had a real estate salesperson's license.

In 2016, NRK of New Jersey, Inc. (NRK), a franchisee of Sotheby's International Realty (Sotheby's), also was a licensed real estate brokerage business. NRK had thirteen offices, including an office in Short Hills. Charles Oppler was the Chief Operating Officer and a broker/owner of NRK, and he was apparently well known in the New Jersey real estate business.

In July 2016, plaintiffs entered into an Asset Purchase Agreement (APA) with NRK.[1] Plaintiffs executed the APA on July 7, 2016. NRK executed the agreement the following day.

In the APA, plaintiffs agreed to sell, and NRK agreed to purchase, substantially all of TRG's operating assets including its inventory of contracts for the sale and purchase of real or personal property, leases of real property, executed listing agreements, sales records, customer lists, interests in social media sites, furniture, supplies, and equipment. To acquire these assets, NRK agreed to pay TRG and the TRG Members an amount equal to a minimum of $1,700,000.

The APA provided that at the closing, NRK would deliver a cash payment of $925,000 and a promissory note for $775,000 according to certain terms and conditions. The APA further provided that after the closing date, NRK would pay TRG an additional purchase price, which included amounts NRK received in connection with certain contracts and agreements between TRG and third parties that were "fully executed" prior to the closing date. The closing was to take place on July 26, 2016.

---

[1] We note that in the APA, the TRG Members are referred to as the TRG Partners.

A-5204-18T2

The APA also stated that the TRG Members would remain as independent contractors of NRK for a two-year period, commencing on the closing date. TRG and the TRG Members agreed "to exercise reasonable efforts to cause" the sales and broker associates who were then affiliated with TRG to become independent contractors of NRK.

The TRG Members additionally agreed to "personally address" the current TRG associates at a meeting or meetings to announce the APA and recommend that they become independent contractors with NRK. The APA stated, however, that nothing in the agreement "shall be construed to obligate [NRK] to retain, after the [c]losing, any current" sales or broker associate "currently associated or affiliated with" TRG.

The APA also stated that Barbara Birkitt (Birkitt) was TRG's broker of record and she would assist in the transition. The parties agreed they would communicate with Birkitt and make "reasonable efforts to cause Birkitt to become the manager/designated realtor" of NRK's Short Hills office.

The APA further provided that NRK's obligation to proceed with the closing "shall be subject to the fulfillment of the obligations [therein] contained . . . and the fulfillment of the conditions set forth below . . . ." One of the conditions precedent, which was set forth in Section 11.07, stated that:

[NRK] shall be satisfied, in its sole discretion, that the real estate licenses of the sales associates and broker associates currently associated or affiliated with [TRG] will be transferred to [NRK] on substantially the same or similar terms as currently exists between the sales associates or broker associates currently associated or affiliated with [TRG].

At the time the parties signed the APA, TRG had thirty-seven licensed sales associates, which included the three TRP Principals and other persons who held real estate licenses but were not involved in the real estate business. According to plaintiffs, TRG was a stronger performer than NRK in the Short Hills real estate market.

Plaintiffs assert that the purpose of the APA was to strengthen NRK's presence in Short Hills by having the associates at TRG transfer to NRK, along with their listing agreements and books of business. NRK contends it was its understanding that the TRG associates would transfer to NRK as a group.

On July 12, 2016, the parties announced the proposed transaction to TRG's associates. Plaintiffs claim that thereafter, Oppler made little to no effort to cause TRG's associates to become affiliated with NRK. They allege Oppler alienated the TRG associates by announcing NRK had not decided who would manage the Short Hills office, even though the APA provided that NRK would make "reasonable efforts to cause" Birkitt to take that position.

It appears that, as the scheduled closing date approached, none of the TRG associates had agreed to join NRK. Many took positions with competing firms. According to plaintiffs, NRK refused to commit to the agreed upon closing date or any other date. On July 25, 2016, plaintiffs demanded that NRK close immediately, asserting that time was of the essence.

On that same day, NRK announced Jacqueline Elliott would be manager of NRK's Short Hills office. On July 26, 2016, Oppler told Cannizzo that NRK did not intend to go forward with the APA, and he asked plaintiffs to drop the purchase price or he would cancel the agreement. Plaintiffs refused to reduce the agreed-upon price.

On August 2, 2016, plaintiffs filed a complaint in the Law Division, naming NRK, Oppler, Randy Lyn Ketive (Ketive), and Sotheby's as defendants. Among other things, plaintiffs alleged they fulfilled their obligations under the APA and defendants did not. Plaintiffs claimed defendants failed to promote the transaction, did not make timely offers to TRG's associates, and made false and misleading statements that induced them to enter the agreement.

Plaintiffs asserted claims of breach of contract, breach of the covenant of good faith and fair dealing, unfair competition, fraudulent inducement, tortious interference with prospective economic advantage and contractual relationships.

6

They sought compensatory and punitive damages, equitable relief, interest, costs of suit, and attorney's fees.

On August 3, 2016, NRK notified TRG that it was cancelling the APA due to TRG's failure to fulfill the conditions precedent under the agreement, including Section 11.07. Defendants thereafter filed a motion to dismiss the complaint.

On October 28, 2016, Judge Thomas J. Walsh entered an order dismissing the claims against Ketive and Sotheby's. Judge Walsh also dismissed plaintiffs' demands for equitable relief and punitive damages claims against NRK and Oppler but denied the motion to dismiss the other claims against NRK and Oppler.

In November 2016, NRK and Oppler filed an answer to the complaint, along with counterclaims against plaintiffs for breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent inducement. On November 17, 2016, Judge Walsh filed an order stating that the previously dismissed claims were dismissed without prejudice.

On December 9, 2016, Judge Walsh entered an order that, among other things, limited discovery to the period from January 1, 2016, to August 3, 2016. The order also precluded discovery on any acquisition, merger or consolidation

involving defendants to which plaintiffs were not a party. Plaintiffs later filed a motion for reconsideration of the December 9, 2016 order. On November 3, 2017, Judge Kenneth J. Grispin denied the motion.

After the close of discovery, NRK and Oppler filed a motion for summary judgment on the remaining claims against them. Plaintiffs opposed the motion and filed a cross-motion seeking summary judgment on NRK and Oppler's counterclaims. On July 10, 2018, Judge Grispin filed an opinion in which he concluded that NRK and Oppler's motion should be granted in part and denied in part, and plaintiffs' cross-motion should be denied. The judge memorialized his decision in an order filed with the opinion.

The July 10, 2018 order granted Oppler's motion for summary judgment on the claims for breach of contract and the covenant of good faith and fair dealing and granted NRK and Oppler's motion for summary judgment on the fraudulent inducement claims. The order denied the motion for summary judgment on the claim against Oppler for unfair competition and the claims against NRK for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair competition. In addition, the order denied plaintiffs' cross-motion for summary judgment.

Thereafter, NRK and Oppler filed a motion to bar the report and opinions of plaintiffs' liability expert, Stephen H. Murray (Murray). On September 21, 2018, Judge Alan G. Lesnewich filed an order granting the motion. The judge stated that Murray's report was an inadmissible "net opinion," which was not supported by any industry standard and would encroach upon the province of the jury. Plaintiffs filed a motion for leave to serve an "amended" expert report. Judge Mark P. Ciarrocca entered an order dated October 12, 2018, denying the motion.

The remaining claims against NRK and Oppler were tried before a jury, with Judge Lesnewich presiding. On the first day of trial, plaintiffs moved for reconsideration of the court's December 9, 2016 protective order. Judge Lesnewich denied the motion and ruled that all evidence introduced at trial must conform to the parameters of the protective order.

At trial, plaintiffs presented testimony from Cannizzo, the Bigoses, Birkitt, Elliott, and several individuals who were TRG associates at the time of the NRK's anticipated acquisition of TRG. Plaintiffs also introduced excerpts from interrogatory answers and deposition testimony, following which plaintiffs rested.

NRK and Oppler then moved for involuntary dismissal of the claims pursuant to Rule 4:37-2(b). Judge Lesnewich heard oral argument and granted the motion as to the claims for breach of the covenant of good faith and fair dealing and unfair competition but denied the motion as to the claim for breach of contract. The judge found that based on the evidence presented, no reasonable jury could determine that plaintiffs had established the elements of the dismissed claims.

Oppler was defendants' only witness. After he completed his testimony, NRK and Oppler moved pursuant to Rule 4:37-2(b) for involuntary dismissal of the breach of contract claim. The judge heard oral argument, reserved his decision, and the following day granted the motion.

The judge found that Section 11.07 gave NRK the right to terminate the agreement if, in its sole discretion, it determined that an insufficient number of TRG associates had agreed to become independent contractors with NRK and transfer their licenses to NRK. The judge found no reasonable jury could reach a different interpretation of the agreement.

Judge Lesnewich filed an order of judgment dated June 17, 2019, which dismissed plaintiffs' breach of contract claim with prejudice. The order noted

that all other claims and counterclaims had been dismissed by court order or by defendants. This appeal followed.

On appeal, plaintiffs argue: (1) the trial judge erred by granting the motion for involuntary dismissal of the claims at trial; (2) the motion judge abused his discretion by entering the December 9, 2016 protective order and limiting their cross-examination at trial in accordance with that order; and (3) the claims for breach of contract, breach of the covenant of good faith and fair dealing, and unfair competition should be remanded for a new trial before a new judge.

We note that in their notice of appeal, plaintiffs state they are appealing from various orders including the order of September 21, 2018, which barred their expert's report and testimony, and the order of October 28, 2016, which dismissed the claims against Ketive and Sotheby's.

However, in their briefs, plaintiffs present no arguments regarding the orders of September 21, 2018, and October 28, 2016. Therefore, plaintiffs are deemed to have waived any argument for reversal of these orders. See Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Zavodnick v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001).[2]

---

[2] Since plaintiffs' arguments on appeal are addressed to the claims against NRK and Oppler, any further reference to defendants in this opinion is a reference to these two parties.

## II.

As noted, in this appeal, plaintiffs contend the trial judge erred by granting defendants' motion for involuntary dismissal at trial of their claims pursuant to Rule 4:37-2(b). Plaintiffs assert that they presented sufficient evidence to have the jury consider these claims.

Rule 4:37-2(b) provides that at trial, after the plaintiff has presented all evidence on matters other than damages, the defendant may seek the involuntary dismissal "of the action or any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief." The Rule further provides that the trial judge shall deny the motion "if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid.

"The judicial response to a motion for involuntary dismissal at trial 'is quite a mechanical one.'" Perez v. Professionally Green, LLC, 215 N.J. 388, 407 (2013) (quoting Dolson v. Anastasia, 55 N.J. 2, 5 (1969)). The judge should deny the motion "if, accepting as true all the evidence which supports the position of the party defending against the motion and according [that party] the benefit of all inferences which can reasonably and legitimately be deduced

therefrom, reasonable minds could differ . . . ." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (quoting Verdicchio v. Ricci, 179 N.J. 1, 30 (2004)).

Furthermore, the motion for involuntary dismissal should only "be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action." Ibid. (quoting Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008)). When reviewing a decision on a motion for involuntary dismissal, we apply the same standard that governs the trial court. Ibid. (citing ADS Assocs. Grp. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014); Frugis v. Bracigliano, 177 N.J. 250, 269 (2003)).

A. Claimed Breach of the Covenant of Good Faith and Fair Dealing.

Every party to an agreement "is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005) (citing Wilson v. Amerada Hess Corp., 168 N.J. 236, 241, 244 (2001)). "Good faith is a concept that defies precise definition." Ibid. However, "[g]ood faith conduct" is generally considered to be "conduct that does not 'violate community standards of decency, fairness or reasonableness.'" Ibid. (quoting

Wilson, 168 N.J. at 245; Restatement (Second) of Contracts, § 205 cmt. a (Am. Law Inst. 1981)).

> "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Ibid. The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing "anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract."
>
> [Id. at 224-25 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).]

"Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Id. at 225 (quoting Wilson, 168 N.J. at 251). "The party claiming breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Ibid. (quoting 23 Williston on Contracts § 63:22 (Lord ed. 2002)).

Here, Judge Lesnewich found that upon consideration of the evidence presented by plaintiffs, and giving plaintiffs the benefit of all favorable inferences, no reasonable jury could conclude that defendants had acted in bad faith, with ill motive, or without any legitimate purpose to destroy plaintiffs'

reasonable expectations under the APA. Plaintiffs argue, however, that the judge erred by refusing to allow the jury to consider this claim.

Plaintiffs assert they presented evidence which established that after the parties announced the APA, Oppler did not take sufficient steps to cause TRG's associates to become affiliated with NRK. Plaintiffs contend Oppler failed to: meet promptly with the TRG associates; make timely offers to these associates, promptly conduct a tour of NRK's Short Hills offices; provide TRG's associates with information about resources that would be made available to them at NRK; or make TRG agents "feel wanted" by NRK.

Plaintiffs further contend their evidence showed that Oppler alienated the TRG associates and he hired Elliott to manage the Short Hills office, "after wooing her for months in secret," even though the APA indicated Birkitt would have that position. According to plaintiffs, NRK cancelled the agreement because an insufficient number of TRG's existing associates had not agreed to join NRK. They contend defendants' actions were motivated by a desire to avoid payment of the $1.7 million contract price and destroy TRG's business.

We are convinced, however, the record supports the judge's finding that, even viewing the evidence in a light favorable to plaintiffs, a reasonable jury could not find that plaintiffs had established the essential elements of a claim

for breach of the covenant of good faith and fair dealing. As the judge found, plaintiffs did not present sufficient evidence that would have allowed a reasonable jury to conclude defendants had acted in bad faith, with ill will, and without a legitimate purpose to deny plaintiffs their reasonable expectations under the APA.

As defendants note, a key element of the APA, and the principal reason why NRK agreed to pay plaintiffs $1.7 million to acquire TRG and substantially all of its assets, was the expectation that the TRP Members and its other TRP licensed associates would become affiliated with NRK. Plaintiffs could not compel the TRP associates to transfer to NRK. Thus, the APA provided the parties would make "reasonable efforts" to have the TRP associates become sales and broker associates with NRK.

Plaintiffs claim defendants failed to take timely and effective steps to have TRP's associates join NRK. At trial, Stephanie Mallios, who was one of TRG's more productive associates, testified that Oppler's efforts to sign the TRP associates were "disappointing." She said that she thought Oppler was either "distracted . . . not paying attention, . . . not really interested, or not informed." She stated she did not "feel confident . . . in the way he was running the business."

Another TRG associate, Wendy Drucker, testified that she went to meet with Oppler thinking she would join NRK. She said Oppler did not discuss specifics, and she described her meeting as more of a "meet and greet . . . just kind of a very relaxed meet and chat." She stated that based on her meeting with Oppler, she had "doubts" as to whether NRK "was the right place for [her]."

TRG associate Alyssa Russo also testified. She said she had a feeling of "uncertainty" after meeting with Oppler and she decided to explore other opportunities. In addition, TRG associate Sindee Buchalter testified that after the APA was announced on July 12, 2016, she met with Oppler, but she did not feel "valued." She stated that Oppler never made a firm offer to her.

Moreover, the record shows that Elliott had agreed to work for NRK in May 2016. It was agreed she would join NRK on August 3, 2016. Furthermore, although the APA stated that the parties would make reasonable efforts to have Birkitt manage the Short Hills office, NRK was under no contractual obligation to hire her for that position.

Plaintiffs also claimed Oppler failed to make offers to most TRG associates and did not offer any financial incentives to have the associates join NRK. Cannizzo conceded, however, that the APA required no such incentives. Even so, the record shows that NRK offered financial incentives to several of

TRG's top producing associates, including Mallios.  They chose to take positions elsewhere.

We are therefore convinced the judge did not err by concluding that, based on the evidence presented, a reasonable jury could not find defendants had acted in bad faith, with ill will, or without a legitimate purpose to destroy plaintiffs' expectations under the APA.  We conclude the judge did not err by granting defendants' motion for involuntary dismissal of this claim.

B.  Claim of Unfair Competition.

"The essence of unfair competition is fair play."  Ryan v. Carmona Bolen Home for Funerals, 341 N.J. Super. 87, 92 (App. Div. 2001) (quoting Columbia Broad. Sys. v. Melody Recordings, 134 N.J. Super. 368, 376 (App. Div. 1975)). The purpose of the law on unfair competition "is to promote higher ethical standards in the business world." Ibid. (citing N.J. Optometric Ass'n v. Hillman-Kohan, 144 N.J. Super. 411, 427 (Ch. Div. 1976)).  The concept of unfair competition is deemed to be "as flexible and elastic as the evolving standards of commercial morality demand."  Ibid.

In support of this claim, plaintiffs essentially rely upon the same evidence they relied upon for their claim of breach of the covenant of good faith and fair dealing.  They contend defendants failed to make reasonable efforts to retain the

TRG associates, and they acted in bad faith with ill motive in cancelling and terminating the agreement.

Plaintiffs assert that they cancelled the lease on TRG's Short Hills office after the APA was announced, and TRG lost many of its associates because they chose to work somewhere other than at NRK. Plaintiffs contend that as a result of defendants' termination of the agreement, TRG's business was destroyed. They claim this paved the way for NRK to take over its market share without paying for it.

We are convinced, however, that Judge Lesnewich did not err by finding that plaintiffs had not presented sufficient evidence to support a finding by the jury that defendants engaged in unfair competition. The evidence does support the claim that defendants purposely failed to convince a sufficient number of TRG associates to become affiliated with NRK, and then terminated the APA on this basis in order to destroy TRG's business and take over its share of the market.

The judge found that based on the evidence presented, and giving plaintiffs the benefit of all favorable inferences, a reasonable fact finder could not determine that "there was some commercial immorality or lack of fair play involved in this particular failed business transaction, . . . " The record fully

supports that determination.  The judge did not err by dismissing plaintiffs' claim of unfair competition.

C. <u>Breach of Contract Claim.</u>

On appeal, plaintiffs argue NRK breached the APA by invoking Section 11.07 as a basis for cancelling of the agreement.  They contend a reasonable jury could find Section 11.07 did not provide a basis for defendants to cancel the contract.  Plaintiffs therefore argue the judge erred by granting defendants' motion for involuntary dismissal of this claim.

Plaintiffs' breach of contract claim is grounded upon Section 11.07 of the APA.  They claimed Section 11.07 only allows termination of the agreement if TRG's associates do not transfer their real estate licenses to NRK.  At trial, Cannizzo and Karen Bigos testified that this was their interpretation of Section 11.07.  However, defendants contended there is no meaningful distinction between "license" and "licensees."

Defendants asserted that the essential purposes of the transaction required transfer of both.  They contended that, at is core, the transfer of the TRG licensees, along with their licenses, clients, listing, market share, and stream of business, was essential to the transaction.  They maintained the transfer of the TRG licensees was at the heart of the agreement.

When construing provisions of a contract, the court must ascertain the "intention of the parties in the light not only of the language used but also of the surrounding circumstances and the objects sought to be attained by them under their agreement." Great Atl. & Pac. Tea Co., Inc. v. Checchio, 335 N.J. Super. 495, 501 (App. Div. 2000) (quoting Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117, 121 (App. Div. 1960)).

The court's role is to interpret the terms of the agreement, "not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). The court must "read the document as a whole in a fair and common-sense manner." Hardy v. Abdul-Matin, 198 N.J. 95, 103 (2009).

Here, Judge Lesnewich found that no reasonable juror could accept plaintiffs' interpretation of Section 11.07. The judge stated that the APA gave NRK the right to terminate the agreement if, in its sole discretion, a sufficient number of TRG associates did not agree to transfer and become affiliated with NRK. The judge found that plaintiffs' interpretation of Section 11.07 was so illogical, "no rational fact finder could find" it made "any sense."

The judge found that Section 11.07 pertained not simply to the transfer of a real estate license, but to both the licensee and the license. The evidence

showed that a real estate license cannot be transferred without the licensee who holds it. Moreover, the licensee could not become affiliated with a real estate brokerage firm unless the license was transferred to that entity.

The evidence also showed that transfer of both the TRG associates and their licenses was an essential purpose of the agreement. It is undisputed that while the APA provided that the TRG Principals would become independent contractors at NRK, the TRG associates had the discretion to determine whether they wanted to become affiliated with NRK. None of the other TRG associates agreed to become affiliated with NRK.

The judge correctly determined that based on the evidence presented, no reasonable jury could find that defendants breached the contract. The judge did not err by granting involuntary dismissal of the breach of contract claim.

III.

Plaintiffs further argue that the trial court erred by limiting the scope of discovery. Here, plaintiffs sought to engage in discovery regarding NRK's prior mergers and acquisitions. Plaintiffs indicated they wanted to compare NRK's actions in this matter with actions they took in other mergers or acquisitions.

Judge Walsh granted defendants' motion and entered a protective order dated December 9, 2016, which provided, among other things, that plaintiffs

could not seek discovery as to "any acquisition, merger or consolidation" that involved defendants, in which plaintiffs "were not a party." The order also barred any discovery as to matters that pre-dated January 1, 2016.

Plaintiffs later sought reconsideration of the order. Judge Grispin denied the motion. The judge noted that the limit on discovery before January 1, 2016 was consistent with the timing of the transaction that was the basis for plaintiffs' claims. The judge also noted that plaintiffs had not shown discovery regarding unrelated transactions could lead to the production of relevant, admissible evidence.

On appeal, plaintiffs argue that the court erred by entering the protective order and refusing to reconsider the order because evidence regarding NRK's previous mergers or acquisitions would show that defendants "knew how to successfully acquire real estate brokerages and retain agents, which they inexplicably failed to do here." Plaintiffs assert such discovery was critical to their claims.

They contend evidence regarding other transactions could show that NRK and Oppler's efforts in this matter were "grossly inadequate." They contend the trial judge erred by limiting cross examination based on this order. These

23

arguments lack sufficient merit to warrant extended comment.  R. 2:11-3(e)(1)(E).

We note, however, that before the December 9, 2016 order was entered, plaintiffs' counsel agreed to limit discovery to matters that occurred after January 1, 2016.  In any event, the time frames established by the trial court were entirely in accord with the time frame in which the subject agreement was executed.  Moreover, as Judge Grispin found in ruling on the motion for reconsideration, plaintiffs failed to show discovery regarding NRK's unrelated transactions would lead to the discovery of evidence relevant to the claims asserted in this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5204-18T2