767 A.2d 1023 (2001)
Gisela ROSARIO, Plaintiff-Appellant,
v.
Cataldo CACACE and Marge DeSantis, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 2001.
Decided March 9, 2001.
*1024 Arthur E. Amidano, Union City, argued the cause for appellant.
Barbara A. Aurecchione, Hackensack, argued the cause for respondent Cacace (Cole, Schotz, Meisel, Forman & Leonard, attorneys; Steven I. Adler, of counsel and, with Ms. Aurecchione, on the brief).
Pollack & Rosen, Jersey City, for respondent DeSantis, relying on brief filed by respondent Cacace.
Before Judges KESTIN, CIANCIA and ALLEY.
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff appeals from the trial court's order granting defendants' motion for summary judgment and dismissing the complaint, which alleged causes of action and consequential damages for wrongful *1025 discharge by reason of employment discrimination in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. We affirm.
The gravamen of plaintiff's complaint was that she was discharged for speaking Spanish in the workplace and that the action taken on that basis was in contravention of protections afforded her under the LAD. She specifically posits the "national origin" feature of N.J.S.A. 10:5-12 as the basis of her claim, but the pleading also implicates the protection against discrimination on account of "ancestry". Ibid.
Defendant Cacace is a urologist, and defendant DeSantis is his office manager. Plaintiff, born in New Jersey of Puerto Rican ancestry, was hired in late June 1997 as a secretary/medical assistant. She was discharged in early August of the same year. One qualification for the job was fluency in Spanish because most of Cacace's patients were Spanish-speaking. Plaintiff is bilingual in Spanish and English. Another bilingual medical assistant, Bertha Aranzazu, was also employed in the office. Cacace speaks English and Spanish as well, as does his wife who also worked in the office and is of Hispanic origin. DeSantis was the only employee who was not proficient in both languages; she spoke and understood English only.
On summary judgment, the facts are to be viewed in the light most favorable to the respondent on the motion, plaintiff here. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Applying this standard, we recount the following background.
Plaintiff's duties included translating for DeSantis in dealing with Hispanic patients and assisting Cacace in setting up the treatment rooms. On a job evaluation form prepared by DeSantis on July 21, 1997, for the school that had referred plaintiff, plaintiff was rated "good" in thirty-two areas and "fair" in three areas; all other areas on the form were marked "N/ A". Additionally, DeSantis wrote that plaintiff was a "fast learner".
In her certification in opposition to the motion for summary judgment, plaintiff characterized DeSantis's treatment of her as follows:
During my employment at least once a week I was told on many occasions by Defendant Marge DeSantis not to speak Spanish on the job and on occasion not even speak Spanish to patients. One occasion, Defendant Marge DeSantis told me and another employee "I am going to let one of you go because there is too much chitchat in Spanish I don't understand." It is a common custom among people of Spanish national origin to speak Spanish to each other. Bilinguals even combine English with Spanish. It just happens. I have always habitually done this and to this day I still do it and no employer I have ever worked for to this day has ever complained except the above Defendant.
Plaintiff further certified that, on or about August 5, 1997, DeSantis fired plaintiff, telling her, "I'm sorry that I have to let you go like this because you are a nice girl and a quick learner but I cannot have you speaking Spanish in my office."
In her deposition, plaintiff recounted specific incidents of DeSantis's pique at her use of Spanish. All three of the staff worked in the same room. DeSantis would hear plaintiff and Aranzazu conversing in Spanish and "she would flip[,]" once saying "I am going to have to get rid of one of you. There's no reason for you, you know, to be talking Spanish." Plaintiff testified that DeSantis's objections were "constant." Plaintiff elaborated:
She would reprimand us. Sometimes we would do it unconsciously. You're talking to somebody and then they ask you something in Spanish so you answer in Spanish. It is just unconscious, and she would quickly pick up and we would go back to English. It's like a Spanish thing. Any little thing she would bark at you.
*1026 On one occasion DeSantis told plaintiff and Aranzazu, "This is America, you got to speak English, you don't have to be talking in Spanish. I am going to have to get rid of one of you[ ]...."
Plaintiff's and Aranzazu's duties required that they share information with each other, which they often did in Spanish. Plaintiff conceded that it was possible that DeSantis thought they were talking about her, but DeSantis never said so. Plaintiff insisted that her occasional Spanish-speaking never affected her job duties and that she was always willing to let DeSantis know what she was saying:
I always spoke English to Defendant Marge DeSantis. When, Defendant Marge DeSantis, asked me questions I always responded to her in English. Never did speaking Spanish interfere with my work at Defendant Cacace's office. I never made derogatory statements against Defendant Marge DeSantis, nor against anyone in Spanish or in English for that matter while employed at Defendant's office. If Defendant Marge DeSantis would have asked me what I was saying when I spoke Spanish to other employees and patients I would have honestly told her in English.
Plaintiff recounted one instance when a patient addressed her in Spanish and plaintiff answered in Spanish. DeSantis "came in to see what was going on, and she said, `Oh, I want to know what the chitchat is about.'" Plaintiff described another episode as follows:
There was one time [DeSantis] was taking care of a patient with some Medicare information he was not sure about, and as I'm, you know, trying to translate for him, he made a joke. It was a little guy and we laughed, me and Bertha, because, you know, we were right here in the office and we hear, and she got really upset about that, and she reprimanded me and Bertha about joking around with patients in Spanish and, you know, stuff like that. I think what got her mad is that she didn't understand, you know.
DeSantis would often instruct plaintiff to talk to patients in Spanish, as was her regular job duty, and on those occasions DeSantis would not reprimand plaintiff for speaking Spanish. DeSantis seemed to object only when she did not know what was being talked about or when the exchange did not directly relate to instructions she had given.
Cacace never reprimanded plaintiff for speaking Spanish and never instructed her not to speak Spanish in the office. Plaintiff did not know whether he had anything to do with her discharge. She felt that DeSantis was the one who discriminated against her.
Aranzazu filed a certification on behalf of plaintiff asserting in part as follows:
2. During my employment at Dr. Cacace's office, Plaintiff, Gisela Rosario, and I were continually barred from speaking Spanish and continually harassed and threatened with the termination of our employment by our superior, Defendant Marge DeSantis, for speaking Spanish in the office in discrimination to my national origin. The office was filled with Spanish patients and other Spanish workers. On one occasion Defendant Marge DeSantis specifically told Plaintiff, Gisela Rosario, and me, "If you keep talking Spanish the first to initiate will [have] to go. I already had enough Spanish with the patients to be listening to both of you."
3. Plaintiff Gisela Rosario was terminated from her job and was replaced by a non Spanish speaking woman.
After Cacace was served with plaintiff's suit, Cacace's wife fired Aranzazu.
In his certification, Cacace discussed the reasons for plaintiff's termination:
8. During the course of Rosario's short employment with my office, Marge discussed Rosario's lack of performance and indicated that Rosario was not working out. Specifically, Rosario's *1027 skills were not at the level that she represented during her interview.
9. Based on her lack of performance, Rosario was terminated by Marge on or about August 1, 1997.
10. Rosario was not terminated by my office because of her national origin. In fact, she was hired because she spoke Spanish.
11. At no time has this office engaged in any discrimination towards the Plaintiff based on her national origin.
12. The secretary hired to replace Rosario was also bilingual and of Spanish origin.
The only other explanation for the discharge proffered by Cacace was his answer to an interrogatory:
Ms. Rosario was employed as a secretary at Dr. Cacace's office. As any secretary before her and after her, Ms. Rosario was told that all new employees are given a trial period to determine whether they feel comfortable with the job and whether Dr. Cacace's office is happy with their performance. Ms. Rosario's trial performance was determined to be unsatisfactory. Ms. Rosario did not satisfy the job requirements and after a period of approximately five weeks she was released from her position.
All actions taken by Defendant with respect to Plaintiff's employment were for legitimate business reasons and were based on reasonable factors other than Plaintiff's national origin.
DeSantis submitted no certification or other matter, nor did she file any motion papers or appear at the summary judgment argument. Cacace represented that DeSantis had joined in his motion. On appeal, she has joined in the arguments presented by Cacace.
In deciding the summary judgment application, the motion judge rendered an oral opinion:
Well, under the Brill standard the question is can a rational fact-finder [decide the matter in plaintiff's favor]. The plaintiff was hired because she was bilingual. It would be impossible for a rational fact-finder to say she was fired because she was bilingual. That ... wouldn't make any sense. And we have Dr. Cacace's certification that she was replaced by someone who could speak both English and Spanish. It's clear that it's an office necessity that you have to speak English and Spanish there. Maybe Ms. DeSantis should learn Spanish, but that's not for me to decide today.
She had a dispute with an employee and she fired the employee. There are no cases in New Jersey that say a language requirement is discriminatory. I won't get into the issue of reverse discrimination, that's not before me.

* * *
This is a case that arises out of a dispute between an employer or the manager and the employee, and I do not see any basis ... on which a jury could find, rationally, that there [was] discrimination in the firing. And since the doctor has a policy of hiring Spanish speaking people, there is no way a rational fact finder could find any discrimination in this case.
So, for that reason I have to grant the Motion for Summary Judgment. And the same thing is true with respect to Ms. DeSantis. She is not liable. She hasn't done anything legally wrong. Under the law an employee at will can be fired for no good reason. As long as it doesn't violate the law, the firing is proper.
We are in substantial agreement with the motion judge's decisional rationale to the extent he treated this matter as an ordinary dispute between an employer and an at-will employee. Except for any limitations imposed by the LAD, plaintiff had no cause of action in this matter.
*1028 It is clear that the facts of this case, viewed indulgently for plaintiff, do not amount to a prima facie showing of unlawful discrimination under the LAD in respect of either national origin or ancestry. Regarded in the most favorable light for the purposes of summary judgment, the facts establish only that plaintiff was discharged because she spoke Spanish in the workplace in circumstances that were, in the employer's judgment, inappropriate, i.e., in violation of a workplace rule that only English be used except where necessary to assist Spanish-speaking patients. The employer contends, however, that the discharge was because of unsatisfactory job performance in general.
A plaintiff who could prove that an English-only or English-mainly rule was used as a surrogate for discrimination on the basis of national origin, ancestry, or any other prohibited grounds, would qualify for relief under the LAD. But, evaluating the facts as a whole, this plaintiff has made no such showing, even only on the prima facie basis required to survive the motion for summary judgment.
Plaintiff's claims of unlawful discrimination implicate theories of disparate treatment and disparate impact, see Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 81-82, 389 A.2d 465 (1978), as well as hostile work environment. We do not regard the trial court's omission to analyze each theory separately to have been erroneous, for the LAD contains no per se rule that the use of one's own commonly spoken language is protected by the statute's national origin or ancestry provisions. We view the matter as simply involving a two-part employer's rule regarding the use of languages in the workplace, one element addressing the use of Spanish with patients who required such assistance and the other mandating the use of English in all other circumstances, including communications among co-workers. In resolving the issues presented, we adopt the reasoning of the Fifth and Ninth Circuit Courts of Appeal in Garcia v. Gloor, 618 F.2d 264 (5th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981), and Garcia v. Spun Steak Co., 998 F.2d 1480 (9th Cir.1993).
On facts very similar to those at issue here, i.e., involving an essentially identical workplace rule and a native-born plaintiff for whom Spanish and English were both primary languages, the court in Gloor articulated what has become the majority judicial rule on the federal level that the protection contended for does not exist under federal law, i.e., Title VII, the Equal Employment Opportunity Act, 42 U.S.C.A. § 2000e-2. With regard to considerations of discriminatory treatment, the court opined:
No authority cited to us gives a person a right to speak any particular language while at work; unless imposed by statute, the rules of the workplace are made by collective bargaining or, in its absence, by the employer. An employer's failure to forbid employees to speak English does not grant them a privilege. The refusal to hire applicants who cannot speak English might be discriminatory if the jobs they seek can be performed without knowledge of that language, but the obverse is not correct: if the employer engages a bilingual person, that person is granted neither right nor privilege by the statute to use the language of his personal preference. Mr. Garcia was bilingual. Off the job, when he spoke one language or another, he exercised a preference. He was hired by Gloor precisely because he was bilingual, and, apart from the contested rule, his preference in language was restricted to some extent by the nature of his employment. On the job, in addressing English-speaking customers, he was obliged to use English; in serving Spanish-speaking patrons, he was required to speak Spanish. The English-only rule went a step further and restricted his preference while he was on the job and not serving a customer.
*1029 [Gloor, supra, 618 F.2d at 268-69.]
The court also discussed considerations of discriminatory impact:
The argument is made that the rule is discriminatory in impact, even if that result was not intentional, because it was likely to be violated only by Hispanic-Americans and that, therefore, they have a higher risk of incurring penalties. The disparate impact test has been applied to hiring criteria, Griggs v. Duke Power Co., 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, and to on-the-job policies, Nashville Gas Co. v. Satty, 1977, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356. It forbids the use of any employment criterion, even one neutral on its face and not intended to be discriminatory, if, in fact, the criterion causes discrimination as measured by the impact on a person or group entitled to equal opportunity. However, there is no disparate impact if the rule is one that the affected employee can readily observe and nonobservance is a matter of individual preference. Mr. Garcia could readily comply with the speak-English-only rule; as to him nonobservance was a matter of choice.

[Id. at 270.]
The court's reasoning in Gloor was adopted by the Ninth Circuit Court of Appeals in Spun Steak, which also specifically rejected the "long standing position" of the United States Equal Employment Opportunity Commission (EEOC) to the contrary. Spun Steak, supra, 998 F.2d at 1489. The leading case supporting the EEOC construction, upon which plaintiff relies, was also decided by the Ninth Circuit a few years before Spun Steak. Gutierrez v. Municipal Court, 838 F.2d 1031 (1988), vacated as moot, 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989). But as noted by the court in Spun Steak, the opinion in Gutierrez "has no precedential authority ... because it was vacated as moot by the Supreme Court. We are in no way bound by its reasoning." Spun Steak, supra, 998 F.2d at 1487 n. 1. Nor are we. We also find as unpersuasive two other lower court federal cases applying the minority rule. See EEOC v. Premier Operator Servs., Inc., 113 F.Supp.2d 1066 (N.D.Texas 2000) (same); Saucedo v. Brothers Well Serv., Inc., 464 F.Supp. 919 (S.D.Texas 1979) (same).
The most salient undisputed facts that have been developed in the instant matter are: that fluency in Spanish was a job requirement; that the clientele of the practice was primarily Spanish-speaking; that everyone in the workplace, save one supervisory employee, and including the employer himself, spoke Spanish and English; that Spanish was spoken for the employer's benefit to assist patients; and that the duration of plaintiff's employment was only five weeks, an appropriate probationary period. On the face of the record, there may be some dispute whether plaintiff was replaced by a bilingual employee. The employer says she was; whereas a co-employee asserts that plaintiff "was replaced by a non-Spanish speaking woman."
Given the uncontested facts, it is of no moment whether a rational fact finder could conclude that plaintiff was discharged simply because she spoke Spanish in the workplace in ways that contravened the employer's rule, for a discharge on that basis alone does not violate the LAD. Plaintiff's allegation ignores other patent facts: that the non-Spanish-speaking supervisory employee established a rule that, except where necessary to assist patients, only English be spoken so that all persons in the office, primarily she herself, could readily understand what was being said by any others; and that plaintiff may have been discharged for violating that rule. Compare Gloor, supra, 618 F.2d at 270-71; Spun Steak, supra, 998 F.2d at 1487-88. If we were managing such an operation, we might devise a different rule, but the one chosen by this supervisor cannot, by itself, be seen as a violation of law. Gloor, supra, 618 F.2d at 271; Spun Steak, supra, 998 F.2d at 1489. There is no evidence in this record that the English-mainly *1030 requirement was a proxy for discrimination on the basis of national origin or ancestry or any other unlawful ground.
The hostile-environment theory of discrimination advanced by plaintiff is normally employed as a basis for alleging harm in the absence of any concrete adverse job action. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 64-67, 106 S.Ct. 2399, 2404-06, 91 L.Ed.2d 49, 57-60 (1986); Taylor v. Metzger, 152 N.J. 490, 505, 706 A.2d 685 (1998). When, as here, the employee was discharged, the claim really becomes one of disparate treatment. Thus plaintiff's hostile-environment claim is encompassed and duplicated in her disparate-treatment cause of action.
We note finally that plaintiff has also asserted a non-LAD claim, the independent tort of intentional infliction of emotional distress. That claim, however, is based on the very same allegations of conduct asserted to constitute disparate treatment under the LAD. As plaintiff is unable to make a prima facie case for unlawful discrimination, she is perforce unable to prevail on her claim for emotional distress damages based upon the same conduct. Cf. Taylor, supra, 152 N.J. at 509, 521-22 n. 4, 706 A.2d 685.
We hold, accordingly, that plaintiff has not made a prima facie showing of the elements necessary to establish a potential for success in proving her case of discrimination based on national origin or ancestry sufficient to survive the motion for summary judgment. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 461-62, 744 A.2d 1186 (2000). See also, e.g., Velasquez v. Goldwater Memorial Hosp., 88 F.Supp.2d 257, 261 (S.D.N.Y. 2000). A discharge for speaking another language in the face of an employer's English-only or English-mainly rule is not by itself a violation of the Law Against Discrimination.
Affirmed.