775 A.2d 92 (2001)
Timothy E. RYAN, individually, and Timothy E. Ryan Home for Funerals, Plaintiffs-Appellants,
v.
CARMONA BOLEN HOME FOR FUNERALS and Rodney Ryan Bolen, jointly, severally and in the alternative, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted April 4, 2001.
Decided May 24, 2001.
*93 Warshaw & Barnes, Red Bank, attorneys for appellants (Michael T. Warshaw, of counsel; Joan M. Burke, on the brief).
Mulvaney, Coronato & Brady, Toms River, attorneys for respondents (Terry F. Brady, on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD.
The opinion of the court was delivered by STEINBERG, J.A.D.
Plaintiff Timothy E. Ryan appeals from an order granting summary judgment in favor of defendants Carmona Bolen Home for Funerals (Carmona Bolen) and Rodney Ryan Bolen (Bolen). We reverse and remand.
According to their statement of material facts filed in opposition to the motion for summary judgment pursuant to R. 4:46-2(a), Timothy E. Ryan has operated a funeral home business known as Timothy E. Ryan Home For Funerals, since 1983. They have two funeral homes in Toms River, one in Lavalette, and one in Seaside Park. In their statement of material facts, defendants admit that they operate a funeral home business under the name of Carmona Bolen Home for Funerals with one location in Toms River, and one in Whiting.
In early January 1997 the Division of Consumer Affairs filed a fifty-four-count complaint against defendants alleging that they violated the State's Consumer Fraud Act, Mortuary Science Act, and also had committed Medicaid fraud. According to plaintiffs, the investigation received widespread publicity in local newspapers, was reported on the national television program entitled "20/20," and became common knowledge in the community. Defendants did not contest the charges and, ultimately, they were fined and their individual licenses were suspended. However, *94 the suspensions were staggered and Carmona Bolen was permitted to remain in operation. The sanctions were imposed in January 1998, effective February 1, 1998.
Rodney Bolen's middle name is Ryan. Although he previously was referred to in advertisements as Rodney R. Bolen, in July 1998, he began referring to himself as Rodney Ryan Bolen. According to Lawrence Bolen, Rodney began referring to himself as Rodney Ryan Bolen after he became manager of the Toms River home.[1] Plaintiffs asserted in their statement of material facts, that thereafter they began to receive telephone calls from people who were confused because they saw the name "Ryan" in the Carmona Bolen advertisements and believed the two funeral homes were affiliated. The calls were generally negative until the absence of affiliation was explained.
Contending that defendants' use of the name of Ryan damaged their goodwill and reputation, plaintiffs filed suit seeking to enjoin defendants from using the name Ryan in their advertisements, and to place a disclaimer in their advertisements stating that Carmona Bolen is not affiliated with Timothy E. Ryan Home For Funerals. The motion judge granted defendants' motion for summary judgment, concluding that "the utilization of one's name is of constitutional dimension" which is supported by "an absolute privilege."
Plaintiffs appeal, contending that the judge applied the wrong standard in considering defendants' motion for summary judgment, and there were genuine factual issues present regarding unfair competition, confusion and deception to the public precluding the granting of summary judgment. We agree.
Summary judgment must be granted
if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment of order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the nonmoving party, require submission of the issue to the trier of fact. R. 4:46-2(c).
If there exists a single unavoidable resolution of the alleged disputed issue of fact, that issue is insufficient to constitute a genuine issue of material fact. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995). On the other hand, on summary judgment, the facts presented must be viewed in the light most favorable to the party opposing the motion. Ibid.; Rosario v. Cacace, 337 N.J.Super. 578, 581, 767 A.2d 1023 (App.Div.2001). If the competent evidential materials, when viewed in that light are sufficient to allow a rational fact finder to resolve disputed issues in favor of the party opposing the motion, summary judgment must be denied. Brill, supra, 142 N.J. at 540, 666 A.2d 146; Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J.Super. 495, 502, 762 A.2d 1057 (App.Div.2000). On appeal, we apply the same standard that governs trial courts in determining whether summary judgment was properly granted. Graziano v. Grant, 326 N.J.Super. 328, 338, 741 A.2d 156 (App.Div.1999).
"[T]he essence of unfair competition is fair play." Columbia Broadcasting Sys. v. Melody Recordings, 134 N.J.Super. 368, 376, 341 A.2d 348 (App.Div.1975) (internal *95 citations omitted). Thus, the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world. N.J. Optometric Ass'n v. Hillman-Kohan, 144 N.J.Super. 411, 427, 365 A.2d 956 (Ch.Div.1976) (internal citation omitted). Accordingly, the concept is deemed "as flexible and elastic as the evolving standards of commercial morality demand." Ibid. (internal citation omitted). The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair. The law must be sufficiently flexible to accommodate those goals.
In granting summary judgment, the judge concluded "that the utilization of one's name is of constitutional dimension" and that Rodney Ryan Bolen had an "absolute privilege" to use the name Ryan. We disagree. Ordinarily, a person has the right to use his or her name in the operation of a business. Sachs Furniture & Radio Co. v. Sachs Quality Stores Corp., 39 N.J.Super. 70, 82, 120 A.2d 477 (App.Div.1956). While it is presumed that the use of one's own name in business is for proper purposes, the law recognizes that a person "may not use his name so as to compete unfairly or fraudulently or as part of a plan to palm off his wares as those of a namesake." Ibid. (citations omitted). Although this case involves the providing of services rather than the sale of goods, we believe that distinction is of no legal consequence. When a family name has been used in business over a period of time, it may become so associated with a product or products that in the eyes of the public the name becomes synonymous with the product. Sachs, supra, 39 N.J.Super. at 83, 120 A.2d 477. When those circumstances exist, the name has acquired a secondary meaning entitling the user to protection against the unfair and deceptive usage of the name by another person in the same business, even though he or she may bear the same name. Ibid.
Consequently, a person may be enjoined from using his or her name in a commercial enterprise when the use of that name has the capacity for confusion with another well-established business, even though they may not be in competition with one another. Great Atl. & Pacific Tea Co. v. A & P Trucking Corp., 29 N.J. 455, 458, 149 A.2d 595 (1959). The goodwill generated by the name is a valuable commercial asset entitled to protection. Ibid. Moreover, a reputable business need not sit by idly and permit another business to tarnish its reputation even though that other commercial enterprise uses its own name, or the name or names of individuals associated with that enterprise. Id. at 459-60, 149 A.2d 595.
Here, the timing of defendants replacing the initial R. with the middle name Ryan is, to say the very least, highly suspect. After all, Carmona Bolen had been in business for a substantial period of time without using the name Ryan in its advertisements. Although the precise date Rodney Bolen became affiliated with the Carmona Bolen is unclear, it appears as if he became associated with his brother Lawrence somewhere around 1989. He had always been identified in advertisements as Rodney R. Bolen. It was not until after the widespread publicity regarding the complaint lodged against Carmona Bolen, Lawrence Bolen and Rodney Bolen, and the ultimate disposition of the complaint, that Rodney R. Bolen began using the name Ryan in Carmona Bolen advertisements. The evidential materials submitted by plaintiffs to the judge in opposition to *96 defendants' motion for summary judgment created, at the very least, a genuine factual issue regarding plaintiffs' entitlement to relief.[2]
While on remand plaintiffs need not demonstrate actual confusion in the public, nor an actual intent by defendants to practice deception, the existence of either of those factors is of significance in determining whether plaintiffs are entitled to equitable relief. Goldscheider v. Schnitzer, 3 N.J.Super. 425, 433, 66 A.2d 457 (Ch.Div.1949). In addition, on remand, the number of instances of confusion shown is not controlling since the extent of actual confusion is difficult to demonstrate. Great Atl. & Pacific Tea Co., supra, 29 N.J. at 459, 149 A.2d 595. Rather, plaintiffs merely need demonstrate a potential for confusion in order to be entitled to injunctive relief. After all, defendants have no vested interest in the use of the name Ryan in light of the fact that they only began to use that name after Carmona Bolen's difficulties surfaced. Stated another way, Rodney R. Bolen has no vested right to utilize the name Ryan in his advertisement, although it is his given name, to the detriment of plaintiffs who have used that name for a substantial period of time and have built up goodwill entitled to protection against unfair competition. On remand the judge must balance the conflicting rights of the parties and determine if plaintiffs are entitled to relief, and, if they are, fashion the appropriate remedy consistent with principles of fairness, justice and the law. Graziano v. Grant, supra, 326 N.J.Super. at 342, 741 A.2d 156.
Reversed and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] We note that N.J.A.C. 13:36-5.12(c) requires all advertisements for funeral homes to contain the name of the manager or licensee in charge.
[2] While N.J.A.C. 13:36-4.11(d) specifically provides that the use of a surname in connection with the operation of a funeral establishment does not render the surname a trade name, we do not believe that means that the owner is not entitled to protection under common law principles.