

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2003

# Lexington Natl Ins v. Ranger Ins Co

Precedential or Non-Precedential: Precedential

Docket 02-2635

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Lexington Natl Ins v. Ranger Ins Co" (2003). *2003 Decisions.* Paper 580.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/580

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 17, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2635

LEXINGTON NATIONAL INSURANCE CORPORATION,
*Appellant*

v.

RANGER INSURANCE COMPANY

On Appeal from the United States District Court
for the District of New Jersey
District Judge: Honorable Joel A. Pisano
(D.C. Civ. No. 02-00028)

Argued February 28, 2003

Before: SCIRICA, GREENBERG, and GIBSON*,
*Circuit Judges*

(Filed: April 17, 2003)

---

* Honorable John R. Gibson, Senior Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

David C. Dreifuss (argued)
Nagel Rice Dreifuss & Mazie
301 South Livingston Avenue,
Suite 201
Livingston, N.J. 07039-3991

*Attorneys for Appellant*

Joseph P. LaSala (argued)
Nancy McDonald
McElroy, Deutsch & Mulvaney, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, N.J. 07962-2075

*Attorneys for Appellee*

---

## OPINION OF THE COURT

---

GREENBERG, *Circuit Judge*:

### I. INTRODUCTION

This matter comes on before this court on appeal from an order entered May 23, 2002, granting defendant Ranger Insurance Company's ("Ranger") motion under Fed. R. Civ. P. 12(b)(6) to dismiss this action for failure to state a claim on which relief may be granted. In view of the procedural posture of the case we set forth the facts as alleged by the plaintiff, Lexington National Insurance Corporation ("Lexington"), and decide this appeal on the basis of them. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

Lexington and Ranger are licensed insurance companies which underwrite bail bonds in New Jersey. They conduct their bail bond businesses through contract bail agents who, as between the agents and the companies, bear any losses on bail bonds they issue. In the bail bond business in New Jersey the purchasers of the bonds usually pay a premium of ten per cent of the amount of the bond to the bondsmen who divide the premiums with the companies. The percentage of the premium the bondsmen retain varies but typically they remit 20% of the premium to the

company for its share of the premium and 10% of the premium to the company for payment into a reserve fund to secure the company against loss in the event of a forfeiture.

N.J. Stat. Ann. § 54:18A-2 (West 2002) imposes a tax of 2.1% on taxable premiums and N.J. Stat. Ann. § 54:18A-4 (West 2002) provides that taxable premiums consist, *inter alia*, of "gross premiums." Ranger calculates its tax only on the portion of the premium that the bondsmen remit to it but Lexington calculates its tax on the entire premium paid for the bond. By reason of the differential in the tax calculation, Lexington charges that Ranger "has the ability to contract with its contract bail agents at a lower cost than its competitors . . . and has done so." App. at 4. Moreover, Lexington claims that it has lost business to Ranger by reason of Ranger's underpayment of taxes.

Lexington alleges that Ranger's failure to pay the premium tax on gross premiums "is a deceptive and wrongful business practice [which] constitute[s] unfair competition under New Jersey law" causing it injury. *Id.* It further alleges that Ranger's acts constitute intentional and negligent interference with Lexington's economic relationship with customers and prospective customers and interfere with Lexington's prospective economic advantage. Furthermore, Lexington asserts that by reason of Ranger's method of paying taxes it is "committ[ing] an unconscionable commercial practice, deception, fraud, falsity, or misrepresentation" in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* (West 2001). App. at 7. Accordingly, Lexington seeks compensatory, punitive, and treble damages, attorney's fees, interest, and costs. It also seeks injunctive relief, apparently in the form of an order requiring Ranger to pay its taxes to the State of New Jersey on what Lexington believes is a correct basis.

As we have indicated, Ranger moved to dismiss the complaint pursuant to Rule 12(b)(6). It attached to its motion an affidavit of its vice president responsible for its bail bond business who stated that from the time Ranger became authorized to underwrite bail bonds in New Jersey in the early 1990s it has filed annual tax returns with the State of New Jersey pursuant to N.J. Stat. Ann. 54:18A-1

(West 2002), the state has accepted every tax return as filed, and the New Jersey Director of the Division of Taxation "has never issued any deficiency assessments or penalties against Ranger in connection with any return." App. at 12. In response, Lexington submitted an affidavit to which it attached a letter from its own certified public accountant to an officer or employee of the Office of Financial Examination of the New Jersey Department of Banking and Insurance reading in pertinent part as follows:

> I wanted to confirm my understanding of our earlier phone conversations. Based on these conversations, I am confirming that premium taxes on bail premiums must be paid on 'gross premiums' and our interpretations of the New Jersey Taxation statute, Title 54: section 18A-2, et. seq. are correct and that my client has therefore been properly reporting and paying New Jersey premium taxes on this basis.

App. at 16. Without apparent objection of the parties the district court considered these affidavits on the motion to dismiss though it did not convert the motion into a motion for summary judgment pursuant to Rule 12(b), *see Rose v. Bartle*, 871 F.2d 331, 339-40 (3d Cir. 1989), and thus we will consider them as well.

The district court in granting Ranger's motion to dismiss discussed Lexington's claims *seriatim*. First, it indicated that New Jersey's common law unfair competition law does not have clear boundaries but is instead flexible and elastic as evolving standards of morality demand and the essence of an unfair competition claim is the enforcement of fair play. *See Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000); *Ryan v. Carmona Bolen Home for Funerals*, 775 A.2d 92, 94 (N.J. Super. Ct. App. Div. 2001). It then pointed out that Lexington did "not assert that Ranger attempted to mislead the public, create confusion in the trade, or misappropriate[ ] Lexington's product." App. at 24. Furthermore, Lexington did not have a property interest in the allegedly withheld tax dollars. Thus, the court concluded that Ranger's failure to pay its taxes "is an issue between Ranger and the State of New Jersey [and] [e]ven if [Lexington] conclusively establishes that Ranger failed to

pay its taxes, it would not amount to an unfair competition claim." *Id.* at 25. Accordingly, it dismissed that claim.

The district court then dismissed Lexington's claims for tortious interference with prospective economic advantage as it did not consider that its complaint adequately pled that there was "a causal connection between Ranger's conduct and [its] loss of . . . business." App. at 28. While it recognized that it was required to accept Lexington's allegations it was not required to accept "bald assertions, subjective characterizations, or legal conclusions." *See General Motors Corp. v. The New A.C. Chevrolet, Inc.*, 263 F.3d 296, 333 (3d Cir. 2001). Finally, it held that the New Jersey Consumer Fraud Act is inapplicable here as this case "does not directly involve any merchandise that is being sold to the public," app. at 31, and thus does not come within the act. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994); *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1270-74 (3d Cir. 1994); N.J. Stat. Ann. 56:8-1(c) (West 2001). The court then entered the order of May 23, 2002, from which Lexington appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court exercised diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1) and we exercise jurisdiction under 28 U.S.C. § 1291. Our standard of review is plenary and we treat Lexington's allegations as true for the purposes of this appeal and draw all reasonable inferences in its favor. *See Maio*, 221 F.3d at 482. We will apply New Jersey law as the parties have briefed the case on that basis.[1]

---

1. Lexington alleges that states other than New Jersey have tax laws similar to N.J. Stat. Ann. § 54:18A-2 and that Ranger has been acting unlawfully with respect to its taxes in those states as well. We, however, will disregard these allegations as the parties do not cite the law of those unspecified states and instead brief this case as if only New Jersey law applies.

### III. DISCUSSION

We are in agreement with the district court's disposition of this case and also are in accord with its reasoning. We nevertheless place our decision on a slightly modified basis. First, we point out that Lexington does not assert that Ranger directly injured it by, for example, disparaging its product. Nor does Lexington make factual allegations that Ranger dealt unfairly with its customers, *i.e.*, the bail bondsmen or, more remotely, the persons purchasing bonds, as it does not assert that the State of New Jersey could hold them responsible for Ranger's allegedly underpaid taxes.[2] In fact, quite the opposite is true as Lexington charges that by reason of Ranger's wrongful conduct it was able to give its bondsmen more favorable rates than those of its competitors. Rather, Lexington contends that Ranger acted illegally with respect to the State of New Jersey in a matter plainly collateral to its dealings with its own customers.

It should be clear that the implications of this case cannot be cabined. For example, if a business may assert a valid claim against a competitor for unlawfully reducing its costs by underpaying its taxes it follows that a business could assert a claim against a competitor predicated upon a theory that it is obtaining an economic advantage by underpaying its employees in violation of minimum wage act or similar laws. Indeed, the principles underlying Lexington's claims, if accepted, would justify a business suing its competitor on the theory that it is reducing its costs by violating environmental protection laws or any other federal or state law regulating its operations. If we hold that Lexington has pled a claim on which relief may be granted we will invite a tidal wave of litigation as businesses find opportunities to meddle in their competitors' affairs. We are aware that in New Jersey

---

2. Lexington relies heavily on *Feiler v. New Jersey Dental Association*, 467 A.2d 276 (N.J. Super. Ct. Ch. Div. 1983), *aff'd*, 489 A.2d 1161 (N.J. Super. Ct. App. Div. 1984), but that case concerned allegations charging a dentist with untruthful and deceptive billing practices, 467 A.2d at 429, and thus, unlike this case, did not involve a matter collateral to the defendant's business dealings.

arguments that a result in a case may open a Pandora's box do not always fare well. Nevertheless, we will not reach the result that Lexington seeks in part because a federal court in a diversity case should be reluctant to expand the common law. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 n.7 (3d Cir. 2000).

In reaching our result we recognize that anyone familiar with the development of New Jersey law over the last half century fairly must acknowledge that the state's courts have expanded the circumstances that may give rise to tort liability. But there has to be a limit somewhere. Our duty here is to predict how the New Jersey Supreme Court would view this case and we will discharge that duty by holding that it would reject Lexington's claims. *See Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 99, 101 (3d Cir. 1994).

We do not know whether Lexington's or Ranger's view of the New Jersey tax law is correct and, though we do not doubt our ability to do so, we will not decide that issue as our result does not depend on it. We point out, however, that Lexington's letter confirming its conversations with an officer or employee in the New Jersey Department of Banking and Insurance surely cannot establish what the New Jersey law is and, indeed, probably is not even binding on the state. *See Airwork Serv. Div. v. Director, Div. of Taxation*, 478 A.2d 729, 733 (N.J. 1984). Nor are we impressed by the circumstance that the state has accepted Ranger's returns as filed for Ranger does not make a showing that its returns reflected the circumstance that it was paying tax only on the basis of the percentage of the premiums paid for the bonds that reached it. Thus, for all we know the state may not know how Ranger has been computing premiums for tax purposes.

In our view if Ranger has been underpaying its taxes that matter is, as the district court said, an issue between the State of New Jersey and Ranger. As Ranger correctly points out in its brief, the state has a comprehensive system for the examination of tax returns and may assess taxpayers for deficiencies under the State Tax Uniform Procedure Law. *See* N.J. Stat. Ann. §§ 54:48-1 to 54:53-18 (West 2002); *see also* N.J. Stat. Ann. § 54:18A-1.3(c) (West 2002). If the state makes such an assessment against Ranger,

Ranger may seek a review of the assessment in the New Jersey Tax Court. *See* N.J. Stat. Ann. § 2B:13-2 (West Supp. 2002). In the circumstances, we agree with Ranger's contention that if it has underpaid its taxes, which it denies is the case, the determination that it has done so must be made in state administrative proceedings subject to state judicial review. We also agree that its failure, if such be the case, to pay its taxes in full cannot create "a private right of action for a third party to seek an audit of [its] return" on any of the theories Lexington has advanced in this litigation even though the remedy it seeks is damages payable to itself rather than the state. Appellee's br. at 25.

We do not know whether Lexington at a trial could establish that it lost business because of Ranger's ability to reduce costs by underpaying its taxes but in deciding this case we are assuming that it can do so, though, as the district court noted, its factual allegations along these lines seem to be insubstantial. Moreover, we will assume without deciding that Lexington's view of the tax law is correct. Nevertheless, we hold that Lexington must suffer the loss of which it complains without a remedy.

## IV. CONCLUSION

For the foregoing reasons the order of May 23, 2002, will be affirmed.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*