

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2005

# Coefield v. GPU

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2081

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Coefield v. GPU" (2005). *2005 Decisions.* Paper 1452.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1452

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2081

———

JAMES COEFIELD

Appellant

v.

GPU, FIRST ENERGY, DENNIS McGINNIS,
ROBERT SHERMAN, LARRY HAYES

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-2000)
District Judge: Honorable Stanley R. Chesler

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2005

Before: SCIRICA, Chief Judge, ROTH, and VAN ANTWERPEN, Circuit Judges.

(Filed: March 11, 2005)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Before us is an appeal of an order by the United States District Court for the

District of New Jersey granting summary judgment in favor of Appellees. For the

foregoing reasons, we affirm the decision of the District Court.

## I. Facts

Because we write only for the parties, we shall only restate the facts pertinent to our analysis. James Coefield ("Appellant") is an African-American who at all times relevant to this lawsuit was employed by Jersey Central Power and Light Company ("JCP&L").[1] In June 2001, JCP&L posted a job opening for the position of Senior Relay Technician. After a more senior Caucasian employee withdrew his bid for this posting, Appellant applied for, and was awarded, the position over two other Caucasian employees who had also applied.

Appellant was a member of Local Union 1289 of the International Brotherhood of Electrical Workers, and was also a member of a different local covered by the same collective bargaining agreement at all times relevant to this suit. Sometime in 2000, these organizations met with JCP&L management and agreed that the JCP&L's Central New Jersey Region (where Appellant worked) would adopt the same testing procedure that had been used in the Northern Region for approximately 20 years to test candidates for promotion to Senior Relay Technician. All future candidates for the Senior Relay Technician position in the Central Region would be required to take this test, which included the "230 kV line trip test."

Appellant thereafter began the 90-day qualification period mandated by the

---

[1] Appellee FirstEnergy Corp. is a holding company that purchased JCP&L. JCP&L previously did business under the name GPU Energy.

collective bargaining agreement. During this time, JCP&L did not schedule the tests required to promote Appellant, nor did it inform him he would be subject to the additional testing. At the end of this period, Appellant was informed that he would have to pass five categories of testing criteria, including the 230kV line trip test. In order to prepare for this test, Appellant was scheduled to work with a senior relay technician for approximately one week. He also prepared with another relay technician (who was assigned to assist him on the actual test) for two or three days.

Appellant was tested on November 15, 2001. He made five errors, and failed the test. Appellant then filed a union grievance, which JCP&L denied, citing a clause in the collective bargaining agreement giving it exclusive authority to determine promotions.

It was thereafter decided that Appellant's qualification period would be extended so as to allow him another opportunity to pass the required tests. Appellant disagreed with this course of action, arguing that, because there was no signed agreement between JCP&L and his union relating to testing, the entire process was unfair. Despite his protests, Appellant was given a document detailing the five testing criteria he would have to pass. He was also informed in January 2002 that, if he qualified for the promotion after the next test, he would receive back-pay retroactive to the end of his initial qualifying period.

Appellant retook his test on February 4, 2002. At its conclusion, he was immediately informed that he had passed. On February 21, 2002, his promotion became

official, and JCP&L confirmed that the promotion was retroactive to the end of his initial qualifying period. He was also paid all promised back-pay.[2]

Appellant brought suit in the Superior Court of New Jersey, Law Division, Ocean County Division, alleging ten causes of action based on the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. ("NJLAD"), and various common law torts. Appellees timely removed the case to federal district court. Thereafter, Appellant was granted permission to file a second amended complaint, in which he omitted all employment claims implicating federal law. He moved for remand to the New Jersey Superior Court, but was denied. Following discovery, Appellees moved for summary judgment on all remaining counts. A motion hearing was held on October 21, 2003, and the District Court granted Appellees' motion on March 25, 2004. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court originally had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367 and 1441.[3] Our review of the District Court's summary judgment order in

---

[2] After Appellant's promotion, two Caucasian males also applied for a promotion to the position of Senior Relay Technician. Both were required to pass the same tests that had been administered to Appellant. One applicant passed the examination, while the other failed. The latter candidate was given another opportunity to retake the test similar to the one offered to Appellant.

[3] Several of Appellant's original state law claims required the interpretation of provisions of the relevant collective bargaining agreement between his union and JCP&L, and hence were preempted by the Labor Management Relations Act of 1947, 29 U.S.C. § 185, et. seq. See Antol v. Esposto, 100 F.3d 1111, 1117-18 (3d Cir. 1996). Following Appellant's amendment of his complaint (purging it of all claims implicating federal law), the District Court had the discretion to retain or remand the remaining state law

favor of Appellees is plenary. <u>Torres v. McLaughlin</u>, 163 F.3d 169, 170 (3d. Cir. 1998). In reviewing grants of summary judgment, we apply the same test employed by a district court under Rule 56. <u>See</u> <u>Kelley v. TYK Refractories Co.</u>, 860 F.2d 1188, 1192 (3d Cir. 1988). Accordingly, we will find the District Court's grant of summary judgment in favor of Appellees to have been proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing all evidence in the record, we are required "to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." <u>Bartnicki v. Vopper</u>, 200 F.3d 109, 114 (3d Cir. 1999). A plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint – rather, he must point to concrete evidence in the record that supports each and every essential element of his case. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). It is in this regard that Appellant, by and through his counsel, misapprehends his obligation as a non-movant responding to a motion for summary judgment.

### III. Discussion

Appellant asserted three state law claims before the District Court: (1) Failure to Promote Based on Plaintiff's Race; (2) Hostile Work Environment and Discrimination; and (3) Intentional Infliction of Emotional Distress. "Except in matters governed by the

_____

claims. <u>Carnegie-Melon Univer. v. Cohill</u>, 484 U.S. 343, 357 (1988).

Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the State." Erie R. R. v. Tompkins, 304 U.S. 64, 78 (1938). "In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court. In the absence of guidance from that court we are to refer to decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule." McKenna v. Pacific Rail Service, 32 F.3d 820, 825 (3d Cir. 1994) (citations omitted). Our determination today is therefore governed by the laws of the State of New Jersey and the rulings of its courts. We shall discuss the District Court's disposition of each claim in turn.

*A. Failure to Promote Based on Appellant's Race*

The District Court concluded that Appellant had failed to put forth evidence that established a *prima facie* case for failure to promote due to race discrimination. The Supreme Court of New Jersey has adopted the methodology of the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), "as a starting point in actions brought under the [NJLAD]." Andersen v. Exxon Co., U.S.A., 446 A.2d 486, 490 (N.J. Sup. Ct. 1982). Under this methodology, a court must first determine whether or not a plaintiff has established a *prima facie* case of discrimination, demonstrating by a preponderance of the evidence that he (1) belongs to a protected class, (2) applied for and was qualified for a position for which the employer was seeking applicants, (3) was denied promotion, and (4) others with similar or lesser qualifications achieved promotion.

6

Dixon v. Rutgers, The State Univ. of New Jersey, 541 A.2d 1046, 1051-52 (N.J. Sup. Ct. 1988).

Appellant is clearly a member of a protected class, and the District Court presumed that he was qualified for the Senior Relay Technician position. Where his first claim stumbles is with regard to whether he was actually denied promotion. It is undisputed that Appellant's promotion was delayed during the second 90-day probationary period following his failure of his qualification exam. However, it is also undisputed that, upon passing the second examination, he was in fact promoted to the position of a Senior Relay Technician, and received the pay raise commensurate with such a promotion that was applied retroactively to the end of his first probationary period. We fail to see how this situation can be described as a "denial of promotion." At most it was, as the District Court described it, a "delayed promotion." Contrary to Appellant's suggestion that such a characterization is "absurd and offensive," the fact remains that the particular position Appellant applied for was essentially reserved for him while he prepared to retake the qualification exam, since no other applicants were considered. Moreover, several courts have held that a delayed promotion with retroactive pay does not constitute an adverse employment action. See Pennington v. Huntsvile, 261 F.3d 1262, 1267 (11th Cir. 2001); see also Dobbs-Weinstein v. Vanderbilt Univ., 185 F.3d 542, 545-46 (6th Cir. 1999); Benningfield v. The City of Houston, 157 F.3d 369, 377-78 (5th Cir. 1998). Finally, even if we were to construe this as denial within the meaning of the test, there is no evidence in

7

the record that any other applicant with similar or lesser qualifications was promoted in his place. We therefore conclude that the District Court properly granted summary judgment in favor of Appellees as Appellant did not establish a *prima facie* case of employment discrimination.

*B. Hostile Work Environment*

A plaintiff who alleges hostile work environment racial discrimination under the NJLAD must prove that a defendant's conduct (1) would not have occurred but for the employee's race; and that the conduct was (2) severe or pervasive enough to make a (3) reasonable person of plaintiff's race believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. Taylor v. Metzger, 706 A.2d 685, 688-89 (N.J. Sup. Ct. 1998) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. Sup. Ct. 1993)). The District Court cited Appellant's failure to present evidence demonstrating that harassment took place because of his race, and concluded summary judgment was appropriate as to this claim.

We agree. Appellant has not pointed us to a single fact suggesting that any Appellee has acted in any particular way because of his race, nor could we find one during our independent review. It is undisputed that the qualification exam had been in place in the JCP&L's North Region for some time, and that the decision to apply it to employees of the Central Region predated Appellant's application for promotion. Appellant presents nothing to support his argument that race played any part whatsoever

8

in the adoption of the North Region's testing scheme by the Central Region. There is no evidence that the employee who first applied for the position, a Caucasian, would not have been subject to the same test. Finally, the same test was given to the next two applicants for Senior Relay Technician, both of whom were Caucasian. The mere existence of new testing criteria is insufficient to satisfy Appellant's burden.[4] As such, summary judgment was properly granted here as well.

*C. Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress, a party must demonstrate that (1) a defendant acted intentionally or recklessly; (2) this conduct was extreme and outrageous; (3) this conduct was the proximate cause of plaintiff's emotional distress; and (4) the distress was severe. Buckley v. Trenton Savings, 544 A.2d 857, 863 (N.J. Sup. Ct. 1988). The District Court concluded as a matter of law that Appellees' conduct was neither extreme nor outrageous.

This conclusion was correct. "Examples of conduct found to be extreme and outrageous by New Jersey courts include, when a physician, knowing it to be false, told parents their son was suffering from cancer; spreading a false rumor that plaintiff's son

---

[4]Appellant's accusation that his supervisor was "vindictive" toward him gets him no further. He testified that the supervisor was also vindictive to Caucasians, and "no NJLAD violation [lies] if the same conduct would have occurred regardless of [a] plaintiff's [race]." Lehmann, 626 A.2d at 454. Despite his repeated assertions that his supervisor told racial jokes, we note that Appellant testified that his supervisor never made a racial joke in his presence. Further, nothing in the record suggests that any party to this claim ever made any racial joke regarding African-Americans, in or outside of Appellant's presence.

had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside a loaf of bread for a sensitive person to open." McConnell v. State Farm Mut. Ins. Co., 61 F. Supp. 2d 356, 363 (D.N.J.1999) (citing Hume v. Bayer, 428 A.2d 966, 968 (N.J. Super Ct. Law Div. 1981)) (internal quotation marks omitted). The acts that Appellant claims are extreme and outrageous are the exact same acts he cites in support of his NJLAD discrimination claims, which, as we have discussed, are without merit. "As [he] is unable to make a *prima facie* case for unlawful discrimination, [he] is perforce unable to prevail on [his] claim for emotional distress damages based upon the same conduct." Rosario v. Cacace, 767 A.2d 1023, 1030 (N.J. Super. Ct. App. Div. 2001); see also Griffin v. Tops Appliance City, Inc., 766 A.2d 292, 297 (N.J. Super. Ct. App. Div. 2001) (holding that, except in the case of aggravated discriminatory conduct, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress"). Therefore, summary judgment was appropriately granted as to this third cause of action.

## IV. Conclusion

Because Appellant has failed to support the essential components of each claim with record evidence, the District Court properly concluded that Appellees were entitled to summary judgment as to each of the three causes of action. We therefore affirm the decision of the District Court.